WILLIAM N. KNOX *versus* BENJ. G. CHALONER.

The right of erecting mills and mill dams, and of flowing land, conferred by the R. S. of 1841, c. 126, is subject to the paramount right of passage of the public, across and upon streams, in all cases where the streams in their natural state are capable of floating boats or logs.

All hindrances or obstructions to navigation, without direct authority from the Legislature, are public nuisances.

A dam erected over navigable waters, under authority from the Legislature, in such a manner as to impede navigation beyond what the Act authorizes, is *pro tanto* a nuisance.

This principle applies also to rivers which are not navigable, in the strict sense of the word, as used in the common law — to streams capable in their natural state of floating boats and logs.

The settled doctrine that important individual rights as against individuals may be acquired and lost by adverse possession and enjoyment for a period of more than twenty years, does not apply to the rights of the public in a navigable river.

A public nuisance can never be legitimated by lapse of time, for every continuance of it is an offence.

It *seems* that the remedy against a public nuisance by abatement is in all respects concurrent with that by indictment.

The case, *Brown* v. *Chadbourne,* 31 Maine, 9, affirmed.

EXCEPTIONS from *Nisi Prius,* APPLETON, J., presiding.

This was an action of the case for maintaining a dam across Chase's stream, and thereby obstructing the passage of plaintiff's logs. The evidence, on the part of plaintiff, shew that the dam complained of had been built seventy-two years, during which time it appeared that the owners of logs had driven them into the defendant's mill pond, and then hauled them by the falls dam to the stream below, whence they were run into the East Machias river. There was' no evidence that logs had ever been driven over the falls before the dam was built, nor since. There was testimony from various witnesses, called by the plaintiff, that in their opinion logs might be driven in high water over the falls where the dam now is, if the dam were removed.

There was testimony from other witnesses, called by the defendant, that in their opinion logs could never have been driven over these falls with the stream in a state of nature.

The defendant offered to show that the dam had existed for a much longer period than that shown by plaintiff, and that no claim had ever before been made upon the owners of the dam for damages, and that they had never been before called upon to make, and had never made, any sluice, or in any other mode aided the owners of logs above to pass them over the dam and falls.

The presiding Judge excluded this evidence upon the ground that, if this was a public river, no right could be shown, nor any grant inferred from a user or exclusive enjoyment, however long continued.

The Judge also instructed the jury, that if the river in its

natural state was capable of being useful for floating boats, logs, &c., for purposes of trade or agriculture, the plaintiff was entitled to recover, however long the dam of the defendant might have stood; and notwithstanding his user of the river had been open, notorious, and adverse, and although no logs had ever been floated over the falls where the dam now is.

The jury returned a verdict for the plaintiff.

In answer to interrogatories proposed at the instance of the plaintiff, they found this a public river.

If the rulings were erroneous, and the jury were authorized to infer a grant from the uninterrupted enjoyment of the dam for so long a time, the verdict is to be set aside, and the plaintiff to become nonsuit; otherwise, judgment is to be rendered on the verdict.

*J. A. Lowell*, for defendant.

1. If none but private rights were in question in this case, the authorities are abundant, that the erection of the dam and twenty years open, notorious and peaceable possession and enjoyment, would give the defendant a right to maintain it; and that the plaintiff's right of action would be barred by lapse of time.

2. That the regulation of the navigable waters within this State is vested in the sovereign power, to be exercised by laws duly enacted; and that the navigation may be impeded, if, in the judgment of that power, the public good requires it; and if the more apparent object be the profit of the grantee, that it is the right and duty of that power, to determine whether the public interest is so connected with the private, as to authorize the grant, is settled by a long and uninterrupted series of legislative enactments, commencing in Massachusetts at a very early period, and continued in this State since our separation, extending down to the present time, many of them, after solemn argument, sanctioned by the adjudications of our highest Judicial Courts.

Many of these enactments were grants to erect dams, bridges, causeways, and other obstructions, impeding the navigation, not for the purpose of giving greater facilities in an-

other mode, but for the promotion of a common benefit in a manner entirely disconnected with navigation; such as dams, to create a water power for different manufacturing purposes, and to control and withdraw the water to supply aqueducts, and bridges and causeways to facilitate intercourse by land. *Moor* v. *Veazie*, 32 Maine, 343, and cases there cited by SHEPLEY, C. J., in his learned and elaborate opinion, p. 359.

As the regulation of the navigable waters within this State is vested in the sovereign power, to be exercised by laws duly enacted; and it is competent for that sovereign power, through its Legislature, to *impede* navigation, if in their judgment the public good requires it, it follows that they had the power to *grant* to those under whom the defendant claims, the right to erect the dam in question.

3. The defendant offered evidence, proper for the consideration of the jury, which if not conclusive, tended strongly to show that such a right had been *granted* by the sovereign power, and that the grant had been lost by time and accident, which evidence should have been received. But it was rejected by the presiding Judge, who erroneously instructed the jury, "that if the river in its natural state was capable of being useful for floating boats, logs, &c., for purposes of trade and agriculture, the plaintiff was entitled to recover, however long the dam of the defendant might have stood; and notwithstanding his user of the river had been open, notorious and adverse; and although no logs had ever been floated over the falls where the dam now is." 3 Starkie on Ev. 1202, 1203, 1204, 1205, 1207, 1219, and note, (r) and cases there cited; 1220, and note (1,) and cases there cited; 1221, and note (2,) and 1222; 1 Greenleaf on Evidence, § 17, and notes; § 45, and notes; 2 Greenl. on Ev. § 539, and note 1, and cases there cited, and § § 541, 543 and 546; 3 Greenl. Cruise, 217, and note 1; 220, and note 1, and cases there cited; 222, and note 1, and cases there cited; 215, 218 and 219; *Tyler* v. *Wilkinson*, 4 Mason, (C. C. R.) 397; opinion of STORY, J., 401 and 402; *Inhabitants of Arundell* v. *McCullock*, 10 Mass. 71; *Crooker* v. *Pendleton*, 23 Maine, 339;

*Jackson* v. *McCall,* 10 Johns. 377; *Mather* v. *Trinity Church,* 3 Sergt. & Rawl, 590; *Goodtitle* v. *Baldwin,* 11 East, 480.

*Walker,* for plaintiff.

1. The stream in question is navigable and a public river. The jury have so settled as a fact.

2. The only question that remains is, has the defendant and those under whom he claims, maintained the dam for such a length of time, that the public are barred from the use of the river for the purposes of floating boats, rafts, &c., for the purposes of trade and agriculture?

Did the rule that regulates private rights prevail, the plaintiff's action would be barred by lapse of time; for then twenty years of open, notorious, and peaceable adverse possession, would give the defendant a right to maintain his dam. But in case of public rights, a different rule prevails. No length of time that the public may not have exercised a right, will prevent it from resuming the right when it may have occasion to do so. *United States* v. *Hoar,* 2 Mason, 311; *Cottrill & al.* v. *Myrick,* 12 Maine, 222; *Inhabitants of Stoughton* v. *Baker,* 4 Mass. 528; *Inhabitants of Arundel* v. *McCullock,* 10 Mass. 70; *Weld* v. *Hornby,* 7 East, 195.

3. All the citizens of this State have a right to the use of the navigable waters within it, and this right is not limited to waters in which the tide ebbs and flows, but is extended to lakes and fresh water streams. *Berry* v. *Carle,* 3 Greenl. 269; *Wadsworth* v. *Smith,* 2 Fairfield, 278; *Brown* v. *Chadbourne,* 31 Maine, 9.

An obstruction in a navigable river, that prevents or hinders the public in the use of it, is a public nuisance. Angell on Water-courses, 138; *Commonwealth* v. *Ruggles,* 10 Mass. 390.

4. From no length of time of adverse occupancy of a navigable stream can a grant from the public to the occupant be presumed, so as to give the occupant the right to prevent any one of the public from passing up and down the stream with boats, rafts and lumber, because such occupancy being a nuisance, could never have had a legal commencement. 1 Greenl.

Ev. 50; *Mills* v. *Hall*, 9 Wend. 315; *Inhabitants of Arundel* v. *McCullock*, 10 Mass. 70.

5. A grant can be presumed only when a grant can be lawfully made. It is not in the power of the sovereign of any government to grant a license to commit a nuisance. *Stetson* v. *Faxon*, 19 Pick. 147; *Moor* v. *Veazie*, 32 Maine, 343.

APPLETON, J.—The jury have found the stream, upon which the defendant's dam was erected, to have been a public river, capable, in its natural state, of being useful for floating boats, logs, &c., for purposes of trade and agriculture.

It was decided, in *Brown* v. *Chadbourne*, 31 Maine, 9, that a stream, such as the one across which the jury have found the defendant's dam to have been erected, though it be private property and not strictly navigable, is subject to the public use as a passage way. The Supreme Court of New Brunswick, in *Rowe* v. *Titus*, 1 Allen, 326, held, that all rivers above the flow of the tide, which may be used for the transportation of property, as for floating rafts and driving timber and logs, and not merely such as will bear boats for the accommodation of travelers, are highways, and subject to the public use. In *Boissonnault* v. *Oliv*, Stuart, (Low. Can.,) 565, the same rule of law seems to have prevailed in Lower Canada. "The *Riviere du Sud* appears," says REED, C. J., in that case, "capable of floating only single logs, and not rafts or batteaux, from the frequent interruption of the navigation from the rocks, shallows and rapids, and therefore is not to be considered a navigable river; but, allowing it to be of the description of *seigneuriale et banale*, the use of it, even in that case, must be free and open to the public; for, according to *Freeminville*, vol. 4, c. 4 p. 434, the King preserves his right over all such rivers as may be used for the floating of timber, inasmuch as he is considered to be the protector of commerce and the public interest."

It follows, that the right of erecting mills and mill dams and of flowing land, conferred by R. S., c. 126, must be deemed as in subjection to the paramount right of passage of the pub-

lic in all cases where the streams in their natural state were capable of floating boats or logs.

All hindrances or obstructions to navigation, without direct authority from the Legislature, are public nuisances. *Williams* v. *Wilcox*, 8 Ad. & Ell., 314. When the Legislature give an individual the right of erecting and maintaining a dam upon navigable waters, if the dam is so constructed as to impede the navigation beyond what the Act authorizes, this renders the erection *pro tanto* a nuisance.

The same principle must apply, where the river is not navigable in the strict sense in which the word is used in the common law. A dam which impedes or obstructs the right of the public, in floating boats or logs in a stream in which they can be floated in its natural state, must, for the same reasons, be held *pro tanto* a nuisance.

Important rights, as against individuals, may be acquired and lost by adverse enjoyment for a period of more than twenty years. But this principle does not apply as to obstructions in a public navigable river. "In such case, if the impediment offered to navigation should have existed for a season far beyond twenty years, no private right can demand its continuance, for a nuisance can never be legitimated." Woolwych on Waters, 270. "It is very well settled," says Cowan, J., in *Renwick* v. *Morris*, 3 Hill, 621, "that lapse of time will not bar a prosecution for a public nuisance, (1 Rus. on Crimes, Amer. ed. of 1836, *Folkes* v. *Chad*, 3 Doug. 340, 343,) and I am aware of no case denying that the remedy by abatement is in all respects concurrent with that by indictment. (*Coales* v. *New York*, 7 Cow. 558, 600; *Mills* v. *Hall*, 9 Wend. 315.)" The same case came before the Court of Errors in 7 Hill, 575, when the Chancellor remarked, "the length of time the public nuisance had continued, did not legalize it, for every continuation of the obstruction was in itself an offence."

The same principle applies to rivers which may be used for the floating of logs, rafts, &c., for the same reasons. The public right of passage is not affected nor intended to be af-

fected by the statute in relation to mills. The right of passage still remains to the public for which the mill owner must make suitable provision at his peril, or pay, upon suit, the damages arising from his omission.

*Exceptions overruled.*

TENNEY, C. J., and RICE and GOODENOW, J. J., concurred.