Boynton, J.
The original action was instituted under the provisions of the act of March 7, 1873 (70 Ohio L. 53,, sec. 17), to secure the removal of certain obstructions placed and continued in a public highway, to the inconvenience- and hinderance of public travel. The act authorizes an ac *343 tion to be brought by the county commissioners in all cases, where any state or county road or public highway has been, or may be, injured or impaired by any obstruction placed or continued therein without lawful authority; or where, by reason of such obstruction, the highway is less convenient or useful to the public. Such damages may be recovered as have accrued by reason of the obstruction, or. as may be necessary to remove the same or repair the injury. By the proviso of said act it is declared, among other things, that the statute of limitations “ shall not be deemed to have run in favor of any person or corporation so obstructing, or continuing an obstruction, on such road or. highway.” It is contended by the plaintiff’ in error that while this act professes to confer on the commissioners of a county ample authority to prosecute an action for the relief given by its terms, it fails in its purpose because in conflict with section 28, article 2, of the constitution of the state. This conflict is said to arise both from the language of the proviso and from the terms of the body of the act. It is claimed in the first place, that the right to the defense that the action is barred by the statute of limitations is a vested right and can not be taken away or impaired; and, secondly, that inasmuch as the main provisions or body of the act authorizes, or purports to authorize, an action for a past injury, it is retroactive in its effect, and therefore inoperative aud void.
If it be granted that the right to the defense of the statute of limitations is a vested right, and that it was, therefore, beyond the constitutional power of the legislature to impair the right to insist upon it as a bar to the action—if such defense, independently of the statute, would have been available—it does not result from this, that the whole statute is void. A part of the statute may be void for want of conformity to the constitution and the remainder valid. Whether or not the infirmity that avoids a part affects the entire act, depends upon the connection and dependence on each other of its various provisions. Where they are so *344 inseparably connected in subject-matter, and so relate to ■each other, as to give rise to a presumption that a part would not have been enacted without the whole, the entire act is void. But where no such connection or dependence exists, that part of the statute not itself in conflict with any ■constitutional provision, is as valid as if independently eu.acted. The State ex rel. v. Dombaugh, 20 Ohio St. 167; Bank of Hamilton v. Dudley, 2 Pet. 492; East Kingston v. Towle, 48 N. H. 65; People ex rel. v. Ryan, 58 N. Y. 303; The State v. Wheeler, 25 Conn. 290; Fisher v. McGirr, 1 Gray, 1. An analysis of the provisions-of the act under con■sideratiou readily determines that they are not so mutually dependent in subject-matter, or in operation or effect, as to justify the conclusion that the body of the act would not have been passed without this pmrtieular clause of the proviso. The act declares a liability for certain wrongful acts to the public, and authorizes the enforcement of that liability in an action to loe brought in the name of the county commissioners. The obnoxious feature of the proviso relates wholly to the statute of limitations. It is entirely distinct from the other provisions of the act, both in its purpose and in its subject-matter.
The objection secondly taken, that the statute is inoperative and void because it authorizes an action upon a cause originating long prior to its enactment, although existing at the time, is likewise untenable. That the statute was designed to operate upon pre-existing rights and liabilities,as well as upon those to arise subsequently to its passage, is very evident. Such operation is provided for in express terms. This fact, however, creates no conflict between its provisions and the constitution. Statutes purely remedial, although retroactive in their operation, are not within the prohibited class. All the act did was to substitute one party plaintiff for another; if, indeed, it be true that the commissioners c'ould not have sued without this amendment. See 1 S & C. 246, § 17.
Where an injury or wrong has been committed on -the *345 rights of the public, giving rise to a cause of action, it is entirely competent for the legislature to direct in whose name the action shall be brought for redress. The means to be adopted, or the mode of procedure, to enforce legal rights and duties, are at all times within legislative discretion and control. Rairden v. Holden, 15 Ohio St. 207; 16 Ohio St. 11; Seely v. Thomas, ante, 301. The statute, there-, fore, is not open to the objection taken.
At the trial the company interposed two other defenses to the right to recover:
1. That the charter of the Columbus and Xenia Railroad Company under which its road was constructed, fully authorized the company to construct the same across the public highway, imposing the obligation to restore the samé to its former state, or in a sufficient manner not to impair its usefulness, which requirement the company alleged had been complied with.
2. That the obstruction or structure complained of, was a part of the railroad, and had been adversely occupied and enjoyed for a period exceeding twenty-one years.
The character of the structure was not in dispute. Its size and dimensions, and the manner and place of its construction, were admitted to be substantially as stated in the petition.
But it is contended by counsel for the plaintiff in error, that if the company, at the time the road was eonslructed, left the public highway sufficiently wide to accommodate the* public travel and the public necessities then existing, it fully complied with the requirements of its charter, notwithstanding it actually appropriated over two-thirds of the width of the road for a distance along the highway of forty feet, and constructed an embankment ten feet high upon the ground so appropriated.
"We feel obliged to dissent from this construction of the statute. The 12th section of the charter .confers upon the company no power to lay its track across or along any part of the highway, except upon condition, or as coupled with the duty of restoring it.to its former state of usefulness to the *346 public. The duty to restore is correlative with the right to-intersect or cross. Nor does this section confer any right or power of independent appropriation-of the road or highway, or give any right to narrow the established width of the same, or to exclude the public from the enjoyment of any part of it, without restoring a substantial equivalent for the part taken. The power to appropriate for a compensation in money, is found in other parts of the charter.
Like power was conferred by the act of February 11,1848,. upon all companies organized under its provisions. The. 11th section provided, that whenever it became necessary in the location of any part of any railroad to occupy any road, street, or public ground of any kind, or any part thereof, it should be competent for the public officers or authorities having charge of the same, and the railroad company, to agree upon the manner, and upon the terms and conditions of its use and occupation (1 S. & C. 272, n) ; and in case of inability to agree, authority to apply to the court for its appropriation was granted. This provision in its exact phraseology was carried into the general incorporation act of May, 1852. (1 S. & C. 271, § 12.) Yet in both of these acts—section 15 of the former and section 33 of the latter—it is declared to “ be lawful for such corporation, whenever it may be necessary in the construction of such road to cross any road, or stream of water, to divert the same from its present location or bed, but such corporation shall, without unnecessary delay, place such road or stream in such condition as not to impair its former usefulness.” It is very obvious from a comparison and consideration of these two provisions that they were intended to subserve different, purposes. The one secured to the company tin right to appropriate for a compensation in money, or to use upon such terms and conditions as were agreed upon with the public officers or authorities, any part of the highway or public grounds; and the other secured the right to cross or divert the road or stream upon the condition that its former usefulness should not be impaired. *The language of the 12th section of the charter, differs some *347 what from the language of the act of 1848, ancl the general act of 1852, but in legal effect; it is substantially the same.
There is little doubt that the legislature did not iutend to require a railroad company in crossing a public highway to restore the same to its actual former condition. This would -be practically impossible. Substantial restoration is all that was contemplated or intended. Some inconveniences to public travel are necessarily incident to all public railroad crossings, and such as are inseparably connected therewith, must be submitted to by the public.
But it was never intended to invest the company, without the burden of compensation, with the right to narrow the width of the highway or materially to interfere with its facilities for public travel; much less with the rig lit to incumber the same, as was done here, with abutments and embankments which effectually exclude the public from the use and enjoyment of the greater part of it. The company were prohibited from impairing its “ usefulness.” This-word implies capabilities for use, and appertains to the future as well as to the present. The fact that the public travel over the road may, for the time being, be limited, does not lessen the duty to restore. Roads and highways are established to subserve the future needs of the public as well as the present.
Similar statutes of other states have received a like interpretation. Brown v. The C. & S. R. R. Co., 2 Kern. 486; The People ex rel. v. The D. & C. R. R. Co., 58 N. Y. 165; Veazie v. Penobscott R. R. Co., 49 Me. 119. In Roberts v. The C. & N. R. R. Co., 35 Wis. 679, under a statute which required a highway over which a railway was constructed to be restored to its former usefulness, it was held that the company must so restore it, that its use by the public will not be materially interfered with, nor the highway be rendered less safe and convenient to persons or teams passing over it, except so far as diminished safety and convenience are inseparable from any crossing of the highway by a railroad. In Hamden v. New Haven and Northampton *348 Co., 27 Conn. 165, in commenting on statutes that required the company when • crossing any highway “ to restore it to its former state, or in a sufficient manner not to impair its usefulness,” it is said “that there is no uncertainty in respect 'to their meaning; they only authorize the old highway to be altered, provided it is restored to its former state, or put in as good repair as at tire time of altering the same.”
See also Potter v. The A. & G. W. Railway Co., 20 Ohio St. 150.
In holding that such restoration of the highway must be had as not materially to interfere with public travel, we conform and harmonize the construction of the •statute with- subsequent legislation. By the act of April 15, 1857 ( 1 S. & C. 880, § 2), it is declared that “the obstructing, or incumbering by fences, buildings, structures, or otherwise, any of the public highways, or streets or alleys of any city or village, shall be deemed .a nuisance. ”
The remaining question involves the right of the defendant below to avail itself of the statute of limitations as a defense to the action. By the terms of the contract by which it leased the railway of the Columbus and Xenia ■Company, it assumed and agreed to discharge all the obligations aud liabilities of the latter company. It also has continued the obstruction in use since 1868 as lessee of the road. The case is the same, therefore, in a legal point of view, as if the Columbus and Xenia Company were here insisting that the right to require it to perform the obligation created by its charter was barred by the statute of limitations. The case was tried below on the theory that if the two companies had successively used and enjoyed the ■structure complained of, adversely, for the period of twenty'One years, such use aud enjoyment had ripened into a" title, aud consequently that the right to continue its use ■ could not now be questioned. The errors assigned, in 'addition to those that have already been disposed of, relate wholly to instructions given and refused, and to findings ¡touching the title claimed to have been thus acquix-ed. In *349 oni’ judgment, in view of the admitted facts, this question does not properly belong to the ease. The highway obstructed had been established and opened sixty feet wide. The public had acquired a perpetual easement in it. The fee, subject to this easement, belonged to. the adjoining-proprietor. The erection made -invaded rights both private and public, and clearly constitutes what, in law, is-denominated a public nuisance. To maintain the claim-of the company, it is necessary not only that the statute of limitations should run against the right to abate a public nuisance, but it must also appear that the act under which the Columbus and Xenia Company was incorporated imposes no restrictions upon the right of the company to plead the statute in bar. No principle is more firmly settled at. common law, than that no length of time can legalize a public nuisance. This principle has not been distinctly affirmed by any reported case in this state; yet in all cases-where an effort has been made to acquire title to a portion of a public highway by adverse possession and enjoyment outside of a municipal corporation, such effort has failed. Lane v. Kennedy, 13 Ohio St. 42; McClelland v. Miller, 28 Ohio St. 488. I am aware that it was held in The City of Cincinnati v. Evans, 5 Ohio St. 594, following The Lessee of the City of Cincinnati v. The First Presbyterian Church, 8 Ohio, 298, that the statute of limitations runs against a municipal corporation as fully as against natural persons, and that the question of title by adverse use to a small margin ■ of apublic street was involved in that controversy. Notwithstanding this, the ease can hardly be held to maintain the doctrine contended for by the plaintiff in error here. It was not there intended to sanction a doctrine so palpably at variance with the whole current of authority.
In Folkes v. Chad, 3 Doug. 340, Lord Mansfield, adverting to a special findiug of the jury, that it did not appear that any legal proceedings had been taken within twenty years from the time of the erection of an embankment constituting a public nuisance, said : “The length of time is< *350 clearly not a bar, nor anything like a bar. It is a public nuisance which may increase every hour.”
See also Wood on Nuisances, § 724; Angell on Watercourses, § 254; Ros. Cr. Ev. 796; Fowler v. Sanders, Cro. Jac. 446; Weld v. Hornby, 7 East, 199; Vooght v. Winch, 2 B. & Al. 662; Commonwealth v. Upton, 6 Gray, 476; Renwick v. Morris, 3 Hill, 621; Simmons v. Carnell, 1 R. I. 519; Morton v. Moore, 15 Gray, 576.
Every continuance of a nuisance is, in judgment of law, a fresh nuisance. 3 Black. Com. 220; Thompson v. Gibson, 7 M. & W. 456; Befwick v. Camden, Cro. Eliz. 402; Knox v. Chaloner, 42 Me. 150. In Hamden v. The N. H. & N. R. R. Co., 27 Conn. 158, it was held that “the obligation of a railroad company to restore the highway to its former condition of usefulness remains constant until performed.” The judge, in delivering the opinion, says : “ The statute will not protect a party against the continuance of a nuisance, every continuance of which is said to amount to a new nuisance. The railroad charter does, indeed, legalize the erection of the embankment upon condition that it shall restore the road to its former state of usefulness, which could only be done by erecting good and sufficient railings on the sides of it; and until these railings are erected, the embaukment is a nuisance to the highway, notwithstanding its usefulness to the railroad. If the railroad company was prosecuted for a nuisance, it must justify under its chartered power; but it has no power in relation to this subject except upon the prescribed terms, and having failed to perform these, it must fail in its justification.” Philadelphia, Wilmington and Baltimore R. R. Co. v. The State of Maryland, 20 Md. 157.
’ In The People ex rel. v. The Chicago and Alton Railroad Company, 67 Illinois, 118, it was held that “in the absence of express provision in its charter to the contrary, a railway company is under obligation to leave every highway that it crosses in a safe condition for the use of the public; and where this duty was imposed by the original charter under which a road was built, the same duty will Test upon any company which may afterward own the road *351 eo long as the same is operated.” “ An obligation to keep up a crossing imposed as a condition of the right to cross a highway, must be regarded as necessarily attaching to whatevér person or corporation may be the owner of the road, as long as the right is exercised. It is a continuing condition inseparable from the enjoyment of the franchise.” Erom these adjudications it is plain that the judgment of the superior court was right. The object of the action was to secure the removal of the obstruction, and a restoration, of the highway to the condition of usefulness existing at the time of the encroachment upon it. In other words, to secure a compliance with the condition upon which the right to cross the highway was granted and exercised. If, as seems to be beyond question, a continuance of a public nuisance is, in judgment of law, a fresh nuisance, it is difficultto see how the statute can apply to limit the right of action for its removal. As an independent right of action is' constantly arising, the statute necessarily can not affect the right of removal. But we are satisfied that the duty to restore the road to its former state of usefulness was a condition inseparable from the right to cross, and subsists and remains until such condition is fully performed. If the charter of the company limited its right to exact fare to a certain rate per mile for carrying persons over its road, would it be possible that the company, in an action for a violation of this provision, could successfully interpose as a defense, a continued violation of its charter in the past for a long period of time? Had the statute provided in direct language that it should be lawful for the corporation to construct its railway across a public road, upon condition that its usefulness should not be impaired, the legal effect of the statute would not be changed. The obligation to restore is coupled with the power to enjoy, and is a continuing condition inseparable from such enjoyment, and against the right to insist upon the performance of which, no lapse of time is available.

Judgment affirmed.