## HUFFMAN v. VAUGHAN et al., Appellants.

1. **Mills and Mill Dams**: NUISANCE: PRESCRIPTION. The act of 1835 in relation to mills and mill dams, (R. S. 1835, p. 405,) authorizes the appropriation of private property for mill purposes, provides that every dam and mill shall be commenced within one year and finished and ready for business within three years from the date of the order of court authorizing its erection, gives any one injured by a dam erected without legal permission, a right to recover double damages from the owner, and declares that all dams not erected according to the law shall be deemed public nuisances. *Held*, that a dam erected under an order made by authority of this act, but not commenced nor completed within the time fixed by the act, was an unlawful structure, and no lapse of time would legitimate it, or entitle its owner to the protection of the act against other mills.

2. ———. No mill owner whose dam has not been erected according to law can invoke the jurisdiction conferred on the circuit courts by section 25, Wagner's Statutes, page 951, for the protection of his mill and dam against interference by other dams subsequently erected.

3. ———. If the completion of a mill and dam be delayed more than three years after the entering of an order of court authorizing their erection, the proprietor will, under section 25, Wagner's Statutes, 951, be debarred of any right of action against one subsequently erecting a dam below him, for backing up the water and thereby interfering with the operation of his mill.

*Appeal from Andrew Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED.

*Chas. F. Booher* and *W. S. Greenlee* for appellants, cited *Com. v. Ellis*, 11 Mass. 464; *Stowel v. Flagg*, 11 Mass. 364; *Swett v. Poor*, 11 Mass. 553; *Knox v. Chaloner*, 42 Me. 150; *Renwick v. Morris*, 3 Hill 621; *People v. Cunningham*, 1 Denio 536; *Chalker v. Dickinson*, 1 Conn. 382.

*Meyers & Heren* for respondents.

SHERWOOD, C. J.—Action for damages, brought July 13th, 1875, against defendants, for erecting and maintain-

30—72

ing a mill dam, about two miles south of plaintiffs' mill
dam, to such a height that the operation of plaintiffs' mill
machinery was seriously impeded in consequence of the
flow of back-water from the mill dam of defendants.    In
addition to the prayer for damages, it was prayed that de-
fendants be required to abate their dam to such a height
as would not interfere with the prior rights of plaintiffs.
The plaintiffs claim under one Lewis Shelton, stating that
their dam was erected in conformity to law in consequence
of permission granted to him under the mill dam act.    The
defendants also claim under a like permission.    When the
case was tried, it was shown that the permission granted
to Shelton to erect his dam was on June 28th, 1842; but
the testimony showed, and so the jury, in answer to inter-
rogatories, found, that the work on plaintiffs' dam was not
commenced until 1846, and that the mill was not completed
for business till 1848.    The jury also found that plaintiffs'
mill and dam had been kept up and maintained for twenty-
two years prior to the building of defendants' dam.    It
appeared in evidence offered by defendants, that upon peti-
tion presented by those under whom they claimed, an order
had been duly made for the erection of their dam, August
31st, 1870, and that it and their mill were commenced and
completed in due time.    Under instructions of the court,
the jury returned a verdict for nominal damages in favor
of plaintiffs, and upon this a judgment was entered, and
it was therein ordered that defendants abate the height of
their dam.

    At the time permission was granted to Lewis Shelton in
1842, the act of 1835 respecting mills and mill dams, was
1. MILLS AND MILL  in force.    The 16th section of that act pro-
DAMS: nuisance:
prescription.        vided that the order and decree authorizing
the erection of a dam, and the rights and privileges thereby
granted, should, in all cases, be upon, and subject to, the
conditions thereinafter expressed.    Among those condi-
tions were, as expressed in the 17th section, that the dam
and mills, or other machinery, should be commenced within

one year, and the same be ready and finished for business within three years from the date of the order of permission. The 22nd section of the act referred to, provided that if any person should " build or raise any dam, or any other stoppage or obstruction in, or across, any water course " without obtaining legal permission, and any injury should ensue to another person, that he might recover double damages. And section 23 of that act provided that " all dams, stoppages or obstructions not made according to law," should " be deemed to be public nuisances," and might " be dealt with as such." These statutory provisions, as above quoted, have been continued down to the present time.

I think it very clear from the statutory provisions I have mentioned, that the evident intent of the legislature in enacting those provisions, was that a person might acquire a right to erect a mill dam, provided he proceeded "according to law," and not otherwise; for not only does the statute point out the method to be pursued, but it goes further, and denounces as a " public nuisance " all dams, etc., not made in accordance with statutory provisions. The language of the act leaves no room for construction, and banishes all idea of a right acquired by prescription or lapse of time. It makes no exceptions, and the courts are not authorized to do so. The legislature, by declaring that all dams, etc., not made according to law, are public nuisances, and to be dealt with accordingly, has made the erection of a mill dam in such circumstances as the statute does not sanction, a misdemeanor and indictable offense, and the perpetrator thereof is punishable accordingly, (2 Wharton Crim. Law, § 1410;) and no lapse of time legitimates a nuisance; (Ib., § 1415;) for it is against law to prescribe for a nuisance; (*Fowler v. Sanders*, Croke Jac. 446;) and every continuation of it is an offense. *Knox v. Chaloner*, 42 Me. 150, and cases cited. Since, as above seen, the erection of the plaintiffs' mill dam is an unlawful act, they have no standing in court, unless it be true that

an illegal act can be the foundation of a legal proceeding, a view which cannot be for a moment tolerated. *Swett v. Poor*, 11 Mass. 549.

There is another reason why this action cannot be maintained: It has been ruled that the 25th section of the act of 1845, page 747, which authorized the circuit court, as a court of chancery, to prevent the erection or raising of any dam, etc., which should operate to the nuisance and injury of any mill, etc., previously erected by lawful authority and of a date earlier than the dam complained of; and which section also authorized such court, upon a final hearing, to decree that such dam be abated, etc., only applied to cases where a mill dam, erected in pursuance of law, was " injured by a dam subsequently built, likewise under the provisions of the statute." *Arnold v. Klepper*, 24 Mo. 273. That section has undergone no essential change since that adjudication. 2 R. S. 1855, p. 1085, § 25; 2 Wag. Stat., p. 951, § 23. As the dam of plaintiffs was not erected according to law, their action, which is based on section 23, *supra*, must fail for the reason just stated.

There is yet another reason, which of itself seems conclusive that plaintiffs cannot prevail; it is this: Section 24, page 408, of the act of 1835, which corresponds in every particular with section 27, page 748 of the act of 1845, section 27, page 1085, Revised Statutes 1855, and section 25, page 951, Wagner's Statutes, provides that: " If any person, or his legal representatives, to whom permission to erect a dam in virtue of this law shall have been given, shall fail to build   *   *   the same, together with the mill   *   *   according to the requirements of this law, or the conditions of the permission, it shall be lawful for any person owning the land on one side of the water course, at the point where such dam was erected, or below, to build a dam and mill   *   *   as if no such permission had been given, without incurring any liability

on account of backing the water on such dam." For the foregoing reasons we reverse the judgment. NAPTON, J., absent; the other judges concur.