Charnley vs. The Shawano Water Power & River Improvement Co.

CHARNLEY, Respondent, vs. THE SHAWANO WATER POWER & RIVER IMPROVEMENT COMPANY, Appellant.

*February 27— March 19, 1901.*

*Waters: Improvement of river for logging: Height of dam: Flowage of lands: Compensation: Necessity of taking: Prescriptive rights: Navigable rivers: Lawfulness of dam.*

1. A corporation organized to build and maintain a dam across a river for hydraulic and manufacturing purposes and to improve the river and facilitate the running of logs therein, acquired a franchise, previously granted by the legislature, under which it had power to secure flowage rights under sec. 1777, R. S. 1878, as amended by ch. 318, Laws of 1882 (Stats. 1898, secs. 1777–1777d), and erected its dam pursuant to such franchise. In proceedings under said sec. 1777 to obtain compensation for the overflowing of lands by such dam, *held*, that the corporation cannot be heard to say, as a reason why commissioners of appraisal should not be appointed, that the dam was built higher than was absolutely necessary to accomplish the particular purposes mentioned in said section, i. e. the improvement of the stream and driving logs therein, and that the overflowing of the lands in question was not necessary for those purposes.

2. Although a dam across a navigable stream, constructed without authority from the state, may be a public nuisance, and the persons who have constructed it cannot, as against the public, acquire a prescriptive right to maintain it, yet if the dam overflows the lands of a private person its proprietors may acquire rights of flowage by prescription the same as though the dam had been authorized by the state.

3. A dam built and maintained, without legislative authority, by a riparian owner on a stream navigable only for the purpose of floating logs, is not unlawful if it does not materially affect or abridge the beneficial use of the stream.

APPEAL from an order of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Proceedings to obtain damages to property claimed to have been overflowed by defendant's dam. By ch. 235, Laws of 1889, the privilege of erecting a dam across the Wolf river, near the city of Shawano, was granted to C. M. Upham and others for "manufacturing and other purposes." Said parties or their assigns were given power to secure flowage rights under sec. 1777, R. S. 1878, as amended by ch. 318, Laws of 1882. Defendant is a corporation organized for the purpose of building said dam for hydraulic and manufacturing purposes, and to improve the river and facilitate the running of logs therein, and is the assignee and owner of the rights and privileges granted to Upham and others under the act mentioned. The dam was erected in 1892, and by it the defendant maintains a head of water averaging about ten feet. Shawano creek, the outlet to Shawano Lake, empties into the Wolf river about a mile and one-half above the dam. This creek is navigable for logs and timber, and is thirty or forty feet wide. Some forty years or more ago a dam was built across this creek a little way above its mouth, in which a head of water from six to eight feet was claimed to have been maintained continuously and adversely until 1892, at which time defendant purchased the dam from one Kast, together with all flowage rights. Shawano creek is about four miles long, and is the only outlet of Shawano Lake, which is a body of water of considerable size. *W. H. Charnley* is the owner of lots 1 and 2, section 14, township 27, range 16 E., on the banks of this lake. In 1897, *Charnley* filed a petition for the appointment of commissioners, under sec. 1777 and acts amendatory thereof, to appraise the damages to his lands by reason of the overflow of the same by defendant's dam. The petition sets out the facts required by the statute, and claims injury to about twenty-

five acres of land, specifically described.    An order for hear-
ing was duly made.

Upon the return day the defendant denied that the lands
described in the petition were necessary for the maintaining
of said dam; denied that any portion of said lands were
overflowed.   It then alleged the construction and adverse
maintenance of the Kast dam, a purchase of Kast's rights,
and a prescriptive right to overflow all of the lands described
in the petition.   It also alleged that it does not now and
has not for several years past improved the river for the
purpose of driving logs, and that its dam is now wholly
maintained for the purpose of furnishing power and operat-
ing mills and manufacturing plants located at or near said
dam.

The testimony was taken, by stipulation, before a referee.
Thereafter the court made findings, which are recited in the
order appointing commissioners, among other things, to the
effect that by the construction of its dam the defendant has
overflowed said lands since about April 1, 1892, and that
they were necessary for that purpose and the purposes of its
incorporation; that it has no prescriptive right to overflow
the same; and that the petitioner had suffered damages by
reason thereof.    This appeal is taken from said order.

For the appellant there were briefs by *M. J. Wallrich*, at-
torney, and *C. F. Dillett*, of counsel, and oral argument by
*Mr. Dillett*.   They contended, *inter alia*, that the statute
(secs. 1777–1777*b*, Stats. 1898) restricts the power of over-
flowing and condemning lands to such lands as it is neces-
sary to overflow in accomplishing some purpose therein
enumerated.   The uncontradicted evidence shows that it is
unnecessary to overflow plaintiff's land for any such pur-
pose.   The case at bar not being within the statute, the
petitioner cannot resort to the remedy therein provided, but
must pursue his common-law remedies.   *Moore v. Coburn*, 1

Charnley vs. The Shawano Water Power & River Improvement Co.

Pin. 538; Gould, Waters, §§ 583, 584; *Cogswell v. Essex Mill Corp.* 6 Pick. 94.

For the respondent there was a brief by *Eugene M. Wescott* and *George C. Dickinson,* and oral argument by *Mr. Wescott.*

BARDEEN, J.   The points made by the defendant are (1) that the evidence does not show that the lands described in the petition are overflowed by defendant's dam; (2) that the evidence does not show that the overflow of said lands is necessary in accomplishing the purposes of its creation; (3) that the defendant has a prescriptive right to overflow said lands.

1. Concerning the contention that the evidence fails to show that the petitioner's lands are overflowed by back-water from the defendant's dam, there is considerable evidence in the record to support the trial court's conclusion. We may say that it is supported by a fair preponderance thereof.   To discuss it would serve no useful purpose.   We must therefore overrule the defendant's contention on this point.

2. The petition made a *prima facie* case for the appointment of commissioners, and it was for the company to show why they should not be appointed.   *Gill v. M. & L. W. R. Co.* 76 Wis. 293.   The defendant admits the purpose of its incorporation to be to build, maintain, and operate a dam across Wolf river under the franchise granted by ch. 235, Laws of 1889, for hydraulic and manufacturing purposes, for the improvement of said river, and the building and maintaining of piers to facilitate the running of logs therein.   It accepted the franchise so granted, and erected its dam pursuant to the power thereby conferred.   It must be presumed that it built its dam to such a head and of such dimensions as to properly carry out its corporate purposes, in absence of evidence to the contrary.   Whatever may be the fact, when the company is called upon to pay compensation for

the land it takes by overflow, it cannot be heard to say that it has taken more than is absolutely necessary to carry out its purposes. So long as it maintains its dam under authority rightfully granted by the state, it will not be permitted to say that its dam is built somewhat higher than is absolutely necessary to carry out some of its corporate purposes. See *Babcock v. C. & N. W. R. Co.* 107 Wis. 280. By a fair construction of the act granting the franchise, the person whose lands are overflowed may, as was done in this case, institute proceedings to secure his damages, when the company fails to proceed. When this is done, as said in the case cited, "it would be incongruous to permit the latter to deny necessity of its taking, or to insist on allegation or proof by the other party, when the whole proceeding rests on its own acts, affirming such necessity in the most unambiguous terms."

The trial court found that the defendant had no prescriptive right to overflow these lands. Such finding is but a mere conclusion of law, and it is difficult to say whether it was based upon a consideration and determination of the fact from the testimony, or on an adoption of the rule of law contended for by the petitioner's counsel. Their argument is that Kast and his grantors maintained a dam across a navigable stream without authority from the state; that such dam was a public nuisance, and could never be legitimated by lapse of time, and therefore Kast had no rights he could assign. It must be conceded that Shawano creek is a navigable stream, within the rule established in this state. *Willow River Club v. Wade*, 100 Wis. 86, and cases cited. The dam was built on lands owned by the parties who maintained it. It had been built more than forty years prior to the time the defendant purchased Kast's interests, in 1892. The only evidence in the case regarding the right to maintain it was given by Mr. Kast when he said that he "maintained the dam publicly, claiming a right to do so without permission from any one."

Generally speaking, all hindrances or obstructions to the use of a navigable stream by the public, without authority from the state, are public nuisances. *Barnes v. Racine,* 4 Wis. 454; *State v. Carpenter,* 68 Wis. 165; *Knox v. Chaloner,* 42 Me. 150. See *In re Eldred,* 46 Wis. 530. "There is no such thing as a prescriptive right, or any other right, to maintain a public nuisance." *Douglass v. State,* 4 Wis. 387, and cases cited. This proposition, however, must be understood as applying to the rights of the public, and not to those of individuals, and it is the failure to appreciate this distinction that has led the counsel for petitioner into some confusion. A public nuisance cannot be abated by the act or at the suit of a private party unless it is shown that he has suffered some private and special injury. *Walker v. Shepardson,* 2 Wis. 384; *Greene v. Nunnemacher,* 36 Wis. 50; *State ex rel. Hartung v. Milwaukee,* 102 Wis. 509. This is based upon the principle that the rights of the state are to be vindicated only by public officers, but when the nuisance becomes a private one, so as to affect individual rights, the injured party may pursue his remedy. The fact, however, that a public nuisance cannot be legitimated as against the public, by the mere lapse of time, does not justify the conclusion argued for, that no prescriptive right can be obtained as against individuals. Important rights, as against individuals, may be acquired and lost by adverse enjoyment for a period of twenty years or more. As against the public, the Kast dam was wrongful if it obstructed the navigation of the stream. As against the petitioner, it was wrongful because it overflowed (if it did overflow) his lands and thus invaded his property interests. The private right of action arises, not from the fact that the dam was unauthorized, but because land was taken by the overflow without compensation. The right to damages would have been the same had the dam been authorized by state authority. That one may obtain a prescriptive right of flowage under proper

conditions cannot be disputed. It is a right which must have been claimed and maintained in hostility to the right of the person against whom it is set up. *Vliet v. Sherwood,* 35 Wis. 229. It must have been continuous, exclusive, known to, and acquiesced in by, the owner of the rights affected thereby. 1 Wood, Nuisances, §§ 418, 419, and cases cited. When these conditions concur, and the use has been extended for a period of twenty years or more, the prescriptive right becomes absolute. See Gould, Waters (3d ed.), ch. XI. Such questions are not to be determined by ascertaining how long the dam has been in existence, or by the claim the party makes during the period of prescription. The question is not how high the dam is, but whether the water has been held the requisite period so high as to affect the land flowed as injuriously as it does at the time the landowner seeks damages for such overflow. Gould, Waters, § 343.

While it has been the policy of this state to hold all streams capable of floating logs and timber to be navigable, yet in streams like this, that are not meandered, the landowner and the public have certain reciprocal rights, which may be enjoyed without the destruction of the other. This is fully set forth in the opinion of this court in the case of *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* 74 Wis. 652, which holds distinctly that a dam built and maintained by a riparian owner, without legislative permission, in a stream navigable only for the floating of logs and timber, is not unlawful if it does not materially affect or abridge the beneficial use of the stream. See *Carlson v. St. Louis River D. & I. Co.* (Minn.), 41 L. R. A. 371, note. We fail to find anything in the evidence in the case at bar that brings it outside the line of the discussion and decision in the case last mentioned, nor are we able to perceive why a prescriptive right of overflow could not have been secured, if the facts exist that would bring the case within the principles of law stated.

Upon the question of fact of whether the Kast dam actually backed water upon the petitioner's land to the extent claimed, we have been obliged to refer to the record, and read over 350 pages of typewritten matter, in order to reach a conclusion. The failure to print any considerable portion of the testimony has greatly added to our labors. The burden of showing the nature and extent of the claimed overflow was upon the defendant. Gould, Waters, § 341. A careful review of the evidence convinces us that this obligation has not been met. On the contrary, we believe that a fair preponderance of the testimony shows that such overflow never reached the lands in question at a normal stage of water, as kept back by said dam. An attempt to justify this conclusion by reference to, and a discussion of, the testimony of the numerous witnesses would require much more time and space than the importance of the fact demands. We shall therefore content ourselves with the conclusion stated.

*By the Court.*— The order appealed from is affirmed.