Alfred HARGRAVES, Plaintiff in Error,

v.

John WILSON, May Wilson and LeRoy Speakman, Defendants in Error.

No. 39705.

Supreme Court of Oklahoma.

April 2, 1963.

Rehearing Denied June 18, 1963.

Frank T. McCoy, Robert P. Kelly, Lee W. Cook, Pawhuska, for plaintiff in error.

Chas. R. Gray, W. N. Palmer, Pawhuska, J. Paul Johnson, Ponca City, for defendants in error.

JOHNSON, Justice.

The plaintiff in error, Alfred Hargraves, hereinafter referred to as plaintiff, brought suit in the District Court of Osage County, Oklahoma, against the defendants in error, John Wilson, May Wilson, and LeRoy Speakman, hereinafter referred to as defendants, for a permanent injunction to require the filling of a ditch cut by de-

fendants in a natural ridge on their land, which ditch diverted surface waters from the natural drainage causing damage to plaintiff's land.

Shortly after the filing of the case, a temporary injunction was issued by the trial court pending hearing on the merits. Upon trial of the case on the merits, the court made findings of fact and conclusions of law and denied the injunction. After overruling plaintiff's motion for new trial, this appeal was taken.

The propositions urged by plaintiff for reversal are stated as follows:

1. The ditch constructed by the defendant Wilson through the natural ridge did not constitute a "water course" and Finding of Fact 14 that it did is contrary to the law and contrary to Findings of Fact 6 and 12, and to all the evidence.

2. The defendant Wilson did not acquire prescriptive right to maintain the ditch through the natural ridge on their land.

3. The Court's Finding of Fact No. 13 that the evidence did not definitely show that the water on the plaintiff's land, crops and roadway "resulted from the cleaning out or deepening of the ditch or depression of the natural ridge, nor that such added appreciably to any water gathered there" is contrary to the weight of the evidence.

■ In considering these three contentions of the plaintiff, it should be borne in mind that the rule governing findings of fact by the trial court is as was stated in Thomas v. Owens, 206 Okl. 50, 241 P. 2d 1114, in the third paragraph of the syllabus, wherein we said:

"In an action of equitable cognizance, presumption is in favor of the trial court's finding, and it will not be set aside on appeal unless against the clear weight of the evidence."

In the light of this rule, let us examine plaintiff's first complaint relative to the court's findings Nos. 14, 6 and 12. The findings about which the complaint is made are as follows:

"14. That the ditch or depression in the natural ridge on the Wilson lands became a channel or water course more than fifteen years prior to the time that the plaintiff acquired his lands.

"6. That the ditch or depression through the natural ridge would, in time fill up, as the evidence indicated it had in the past, if left to nature and not been cleaned out or deepened in any respect.

"12. That the ditch or depression through the natural ridge has been cleaned out or deepened to some extent by the Wilsons and others for their benefit as far back as 1930, and as recently as 1954."

The first assertion, supra, involves the sufficiency of the evidence to warrant the finding of a "water course" and a determination of whether there is an inconsistency between Finding No. 14 and Nos. 6 and 12.

■ In the consideration of Proposition No. 1, we are not concerned with the existence of a "waterway" since it is well-established that an easement to cause surface waters to flow over adjoining land may be acquired by prescription without regard to whether the resulting condition constitutes a waterway or merely spreads over the surface. As was said by the Wisconsin court in the opinion in Charnley v. Shawano Water-Power & River Improvement Co., 109 Wis. 563, 85 N.W. 507, 53 L.R.A. 895:

"* * * That one may obtain a prescription right of flowage under proper conditions cannot be disputed. * * *"

While most of the cases concerning such a situation involve some sort of pipe, drain, ditch or channel in the servient estate, such does not seem to be essential. In the instant case the channel is on the dominant estate, and the water flows over the servient estate through no defined area. We see no reason why a "water

course" or any fixed channel is required. In the case of Edwards v. Atchison, T. & S. F. R. Co. (Cal.), 15 F.2d 37, the railroad had acquired a right of way adjacent to plaintiff's land and constructed a roadbed thereon one or two feet above the plaintiff's land. This roadbed was impervious to water, and a culvert was placed below the roadbed to permit the water to pass through. It was alleged by plaintiff that during the winter of 1913–14 heavy rains occurred whereby large quantities of water accumulated and passed through the ditch to the culvert to plaintiff's land, cutting a channel and damaging plaintiff's land.

The answer pleaded rain greatly in excess of anything theretofore known, and further pleaded that the ditch and culvert had been maintained continuously since 1887. The court held for the defendant, and that case is authority for two propositions: 1. That a right to discharge water upon the land of another may be acquired by prescription; 2. That interruptions by dry season do not destroy the continuity of the adverse holding.

The pertinent paragraphs of the syllabus are as follows:

"Railroad, to prove prescriptive right to discharge surface water through culvert onto land, need not show continuous use; interruption of use by dry season not disproving continuity.

\* \* \* \* \* \*

"Evidence held to show prescriptive right in railroad to discharge surface waters through culvert onto land."

As said in 17 A Am.Jur., page 705, Sec. 91:

" \* \* \* It is a well-settled rule that a right of drainage of waters through the lands of another may be acquired by prescription. \* \* \*"

Authorities in support of the above statement are cited from several states.

In connection with the continuity required under adverse possession, it is obvious that the acquirement of an ease-ment to use a passageway or, as in this case, to discharge water does not require a continuous use every hour of the day, but only a use such as is normally exercised. Hence the discharging channel need not be classed as a waterway. In the case of Anneberg v. Kurtz, 197 Ga. 188, 28 S. E.2d 769, 152 A.L.R. 338, a discussion of what constitutes the necessary continuity within the rules of prescription is as follows:

"In Walker v. Steffes, 139 Ga. 520 (9), 77 S.E. 580, 581, it is said: 'The rule requiring continuity of possession is one of substance, and not of absolute mathematical continuity, provided there is no break, so as to make a severance of two possessions.'

"In 17 Am.Jur. 972, § 60, it is said: ' \* \* \* The uninterrupted and continuous enjoyment of a right of way necessary to constitute adverse possession does not require the use thereof every day for the statutory period, but simply the exercise of the right more or less frequently according to the nature of the use.' See, also, 2 C.J. 100, § 134, note 7; 2 C.J.S., Adverse Possession, p. 681, § 125 [p. 708, § 146]. In Park v. Powers, 2 Cal.2d 590, 42 P.2d 75 (3), it was said: 'Where inclosed land suitable for grazing and pasturage is occupied each year during the entire season therefor, as from May until late October or November, possession is "continuous" within adverse possession statute.' Adverse possession includes: the use of an irrigation ditch 'during the cropping season,' Hesperia Land & Water Co. v. Rogers, 83 Cal. 10, 23 P. 196 (1), 17 Am.St. Rep. 209; 'whenever needed \* \* \* during the irrigation season,' Glantz v. Gabel, 66 Mont. 134, 212 P. 858 (3); use of a right of way 'whenever it is needed,' Myers v. Berven, 166 Cal. 484, 137 P. 260 (7); use of a fishery 'every year at the proper season,' McLellan v. McFadden, 114 Me. 242, 95 A. 1025 (15), 1029; raising a dam 'dur-

ing the months of April, May, and June in each year, for the purpose of sluicing logs,' Swan v. Munch, 65 Minn. 500, 67 N.W. 1022, 1023, 35 L.R.A. 743, 60 Am.St.Rep. 491. Where a lake covered land of adjoining owner, 'the occasional letting off the water' did not constitute such interruption as would break its continuity, Alcorn v. Sadler, 71 Miss. 634, 14 So. 444, 445, 42 Am.St.Rep. 484; as to use of irrigation ditch 'whenever necessary', it was said, 'what constitutes continuity of use will depend altogether upon the nature and character of the right claimed.' Hays v. De Atley, 65 Mont. 558, 212 P. 296, 298.

"In 9 R.C.L. 774, § 34, it is said: 'The correct rule as to continuity of user, and what shall constitute such continuity, can be stated only with reference to the nature and character of the right claimed. An omission to use when not needed does not disprove a continuity of use, shown by using it when needed, for it is not required that a person shall use the easement every day for the prescriptive period. It simply means that he shall exercise the right more or less frequently according to the nature of the use to which its enjoyment may be applied.' "

The situation here was not "made for itself" but rather was artificially created.

■ When a drainage channel is obstructed by silt or deposits by the water, the owner of the dominant estate has a right to remove such. As said by the Nebraska court in Bures v. Stephens, 122 Neb. 751, 241 N.W. 542, in the fifth paragraph of its syllabus:

"Cleaning out and deepening a ditch sufficient to drain a basin, for which an easement exists, does not increase the use beyond the original terms."

■ ■ Neither does such situation come within the definition of an interruption of the continuity of the adverse acquirement.

In 17A Am.Jur. at page 695, Sec. 80, the text reads:

"The correct rule as to continuity of user and what shall constitute such continuity can be stated only with reference to the nature and character of the right claimed, and it is sometimes said in this respect that there must be such continuity of user as the right claimed permits. * * *"

In the first part of the above paragraph the text reads:

" * * * By 'continuous and uninterrupted use' is meant use that is not interrupted by the *act of the owner of the land,* or by voluntary abandonment by the party claiming the easement. * * *"

In the Edwards v. Atchison, T. & S. F. R. Co. case, supra, the second paragraph of the syllabus reads:

"Railroad, to prove prescriptive right to discharge surface water through culvert onto land, need not show continuous use; interruption of use by dry season not disproving continuity."

What we have said disposes of the first contention of plaintiff. The finding of a "waterway" is surplusage and not a requirement for the solution of this case.

■ With the principles of law above set forth in mind, let us look at the ensuing propositions.

The plaintiff's second contention, supra, demands an analysis of the evidence. The witness George Crane testified:

"Q. About how long have you been familiar with the Wilson property?

"A. Since 1927 if I remember right on that, and I believe I do. My brother-in-law purchased that farm in 1927. We only kept it a little while until we sold it to Mr. Wilson.

"Q. Are you familiar with a sand ridge that runs along the Wilson property?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. All right. Now, where is the sand ridge? Point out to the Court where the sand ridge is.

"A. Well, this would be the sand ridge right down through here. (indicating)

"Q. Well, do you have any knowledge regarding a ditch in that sand ridge?

"A. Yes; I do.

"Q. Would you point out to the Court about where the ditch is?

"A. Well, I'd say about the center of this. (had a pencil, indicating) Near somewhere right in there. Near the center of this 40 acres.

"Q. When did you first become acquainted with the ditch in regard to years?

"A. Well, I'll have to say I became acquainted with it as soon as we purchased it. I walked all over the farm before we bought it. See?

"Q. What year was that?

"A. In 1927. I'm not too sure about that, whether it was '26 or '27. But it was one of those years. I know we didn't keep it very long until it was sold to Mr. Wilson.

"Q. All right. Now, will you describe to the Court the condition of that ditch at that time?

"A. All right, sir. I'm going to do my best. As near as I remember it, and I think I'm right, it was a low place there—looked as though, I don't know whether it exactly resembled a ditch—a low place in the sand ridge. And I'll have to say it was about as low as the plowed field on the north now. \* \* \*

"Q. Now, how deep was the ditch in relation to your height from the bottom of the ditch to the top of the sand ridge?

"A. It's been a long time since I was down in there, but I do remember that it was oh I'll say it was high as my head to the top of the sand ridge, or higher. Something like that, now just off-hand.

"Q. And do I understand that your testimony is that the bottom of the ditch was level with the plowed field on the north?

"A. As near as I remember it; yes, sir. \* \* \*"

The witness John F. Wilson testified:

"Q. Mr. Wilson, how long has that ditch been there?

"A. It's been there ever since about '30. It's been there long enough to be a permanent ditch.

"Q. All right. Whenever you get a big rain up there and water comes down about the ditch above the ridge, does it go through that ditch?

"A. Part of it does.

"Q. Has it, ever since 1930?

"A. It sure has. It sure has. \* \* \*

"Q. When did you do anything to this ditch or clean it out?

"A. Oh, I don't recollect when I cleaned it out.

"Q. Well, about how long ago?

"A. Oh, it's been I imagine 12, 13 years.

"Q. Why did you clean it out, Mr. Wilson?

"A. I just wanted it to get bigger and let the water—more water go down in there, because it had never bothered nothin'. When it went in there, it practically soaked away within a few days. And, that way, I took it off of

Speakman and put it where it wasn't a hurtin' nobody."

The witness Allen Wilson testified:

"Q. Would you describe this ditch to the Court, Mr. Wilson, at the time you say you now cleaned it out in 1928 or '29?

"A. Yes. If I can recall back 30 years sir, I'll do it.

"Q. All right. Just tell the court about it.

"A. All right. It was just a ditch— it was just an old ditch that grew up in weeds and grass and trees, and you could see that there had been a ditch there all right. That there had been prior to that time.

"Q. Why did you clean it out?

"A. We cleaned it out to let the water off of the ground north of it.

"Q. In other words, you cleaned it out—

"A. That's why it was put there in the first place.

"Q. You cleaned it out so it would drain the water?

"A. Yes, sir."

The witness Klinger testified:

"Q. Mr. Klinger, have you been at the ditch that's on the Wilson land?

"A. I'd seen it years ago.

"Q. You know how long it's been there.

"A. Well; it was there before I ever moved on the place * * *

"Q. How long ago has that been?

"A. Oh, that's been 18, 19 years ago. And we'd always find some good coveys of quail about where that ditch crossed * * *.

*    *    *    *    *    *

"Q. How long was it before 1954 that you saw the ditch?

"A. Oh, I'd seen it several times before '54.

"Q. About what year before 1954 did you last see it, Mr. Klinger?

"A. Well I'd say I seen that ditch in there from 1944 on, for a while. * * *

"Q. Wasn't there vegetation covering all the ditch?"

The witness Speakman testified:

"Q. That was about 23 years ago?

"A. Yes, sir.

"Q. What was the condition in regard to that ditch at that time?

"A. There was a ditch runnin' through this sand ridge about —oh, it's in the neighborhood of halfway between the 40 acres.

"Q. How deep was it 23 years ago?

"A. Well, I judge at the upper mouth of it there between the ridge it's somewhere around 6 feet deep, or maybe a little more, to the highest points in the sand ridge.

"Q. Have you had an occasion to clean that ditch out?

"A. I have. I've cleaned it out with an ax and a shovel several times."

Cross examination:

"Q. Now, did you say that that ditch was there 23 years ago?

"A. That ditch was there before ever I went there.

"Q. All right. Tell the Court. Just describe that ditch to the Court.

"A. You want the width of it and length of it?

*    *    *    *    *    *

"Q. The ditch actually was a slight depression in the hill?

"A. No. It was a ditch when I moved there.

"Q. Tell the Court how big of a ditch.

"A. Well, it was enough for two horses to go down through.

"Q. And how deep?

"A. I never have measured. I haven't measured the depth of the ditch to this day.

\* \* \* \* \* \*

"Q. Mr. Speakman, how long have you known of water running through this ditch on Mr. Wilson?

"A. I've know'd it ever since 1937, '38. The ditch was there when I came to this country."

We deem the evidence sufficient to sustain the trial court's finding that an easement by prescription existed.

In view of our conclusions above expressed, it is unnecessary to discuss plaintiff's third contention, supra.

Judgment affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, WILLIAMS, JACKSON and BERRY, JJ., concur.