SOWA ET AL. *v.* SCHAEFER.

(Decided April 20, 1931.)

*Mr. John M. Pindras* and *Mr. Jesse Stephens,* for plaintiffs in error.

*Messrs. Schaefer & Lawrence,* for defendant in error.

VICKERY, J. This cause comes into this court on error to the municipal court of the city of Cleveland, the purpose being to reverse a judgment of the municipal court rendered in favor of the plaintiff below, Carl W. Schaefer, by virtue of which judgment plaintiff below was to recover and the defendants below, William Sowa et al., plaintiffs in error here,

were ordered to remove all obstructions therefrom and deliver to plaintiff a certain triangular piece of land five feet in width at the back end and running to a point on the street at the front end.

We learn from the record, arguments of counsel, and briefs, that the Perry-Payne Company owned a great number of lots, among which were lots Nos. 98 and 99, which were side by side, in the Perry Payne allotment on Rockwell street in the city of Cleveland, and that on the 4th day of March, 1901, lot No. 98 was sold and transferred from the Perry-Payne Company to one Opitz; that shortly thereafter Opitz erected a house on said lot and built it over about one foot on to lot No. 99; that shortly thereafter he built a fence on the back end of the lot, which was five feet at the rear and over on lot No. 99; and that he occupied continuously by actual, open, notorious, and adverse possession, this triangular piece down to the inception of this suit, without any interference being made against his occupancy. The record further shows that in February, 1921, about twenty years after the conveyance, the bank notified Opitz that his house had been built over on lot No. 99. Lot 99 at all times prior to that time, so far as appears in the record, and perhaps after that time, belonged to the Perry-Payne Company, but, notwithstanding the fact that the bank, perhaps as agent for the Perry-Payne Company, notified Opitz that he was occupying part of lot 99, nothing was done toward ousting him or claiming that piece of property until 1928, when this suit was brought, except that further notice was given in 1926. All this time Opitz was occupying this property openly, notoriously, and claiming ownership, having occupied it by putting

permanent structures upon it, and so there was a clear title by prescription under the statute of limitations unless the running of such statute had been interfered with by reason of the lease for lot No. 99 that was made in 1906 by the Perry-Payne Company to Opitz for a period of one year; but it must be remembered that at that time Opitz was in possession openly and notoriously under the claim of ownership of the strip in question, and at the time this lease was made probably both Opitz and the Perry-Payne Company were ignorant of where the exact lot line was and so nothing was said by either party about this triangular strip, and Opitz leased lot 99, but it was not described by metes and bounds, but only as lot No. 99 in the Perry-Payne allotment of a part of original sublots Nos. 106, 107, 108, 109, and 110, etc., reference being made to a plat which had been recorded.

Now that lease was for one year, and it nowhere mentioned the dimensions of lot No. 99, nor of lot 98, nor did it call attention to the fact that this particular parcel of land in question was in the mind of either party. It is hardly to be presumed that Opitz, having his house on that parcel of the triangular piece of property included in his own lot, would agree to pay rent for that, because he already had it, and the only thing he took possession of under this lease was that portion of lot 99, exclusive of the triangular piece in question. That lease was for one year, and apparently he paid rent for lot No. 99, or that portion of it which he had not occupied prior to 1906, but always continued to occupy under the same claim of ownership down to 1912, when he ceased to pay rent for lot No. 99, and after that time he con-

tinued to hold that portion of lot No. 99 already alluded to as the triangular strip, so it is perfectly clear that this lease was not accepted intentionally by Opitz with the idea that he was paying rent upon any portion of the land that he had occupied prior to the making of this lease, and therefore we do not see how that lease can interrupt the running of the statute.

A man must intentionally and knowingly lease and pay rent for a piece of property in order to prevent the running of the statute.

Now the only question in this lawsuit really is the question of whether this lease interrupted the running of the statute, because, aside from that, there never could be a clearer case of title acquired by prescription, because there was a permanent occupancy of this parcel of land. Now this matter rested until this suit was brought, but after 1921, perhaps several years after, Opitz sold this land to plaintiffs in error, who occupied the property and had no knowledge of any contention or any claim made to lot No. 99 by the Perry-Payne Company, or their successors in title, and when they purchased the property and went upon it, if they did, they would have seen a fence and an old house which occupied the property, and of course they would naturally conclude that this strip of land belonged to lot 98 which they had bought.

Now, as a matter of fact, Carl W. Schaefer is an attorney, and, not owning any land on either side, he brings this action for this strip of land, which would be utterly unavailing for him, and it is admitted that he is doing it for the benefit of the Chinese organization, or the Perry-Payne Company, or the bank which has sold this property to the Chinese organiza-

tion and is seeking to get title for them. Of course the legal title is in Carl Schaefer, and perhaps he has the right to maintain the suit, if anybody could maintain it, but it is a matter to be taken into consideration in adjusting the rights between these parties. To find against the plaintiffs in error in this action would work a great hardship and injustice and would be inequitable, for this house would have to be removed or the entire side torn out and rebuilt; and it would cost more than the entire strip of land is worth; so, balancing the equities between the parties on this proposition, one cannot help but conclude that they are in favor of plaintiffs in error.

Of course we are aware that this is a legal action, but at the same time courts cannot close their eyes to the great wrongs done to one person without any corresponding benefit to another person. This triangular piece of land five feet in the back, running to a point in the front end, cannot be of any great value to those who seek to get it. They claim, however, of course, that it is a legal right. If the legal right be clear, and undoubtedly courts must recognize such right, a court cannot set up its judgment of what is just and right between parties where the law is clear and the rights are clear in favor of one party against the other; but in this case the right of the plaintiff below is so equivocal, and the rights of the defendants seem so clear, that one cannot help but allude to that situation. The land by itself, especially a little triangular piece like this in that vicinity, cannot be of any great value, or cause the Perry-Payne Company to suffer any great loss, or the bank or the Chinese organization either; whereas, to compel defendants to remove the house would cause great

damage, and therefore, under the circumstances, we think that the statute of limitations is a clear bar to the right to recover.

We do not base anything upon the doctrine of estoppel. We recognize the doctrine that one cannot acquire title by estoppel. Anything short of the full statutory period would not prevent a person from claiming his right; but in construing this whole situation together we can come to no other conclusion than that the defendants and their predecessors in title occupied openly and notoriously, and under the claim of ownership, from March 4, 1901, at least, and perhaps earlier than that, but that seems to be the time when the conveyance was made to Opitz, down to the commencement of this action, and a notification followed by no overt act on the part of the claimant to oust the one in possession would not in itself prevent the running of the statute; and there is nothing in this record to show that plaintiff below was induced to wait by any promise of any action on the part of Opitz. So we think that defendants below, together with their predecessors in title, had occupied this property openly and notoriously under the claim of ownership, and had built substantial structures upon it for a period covering over twenty-one years before any attempt was made to oust them from it, and that the lease, inasmuch as it did not mention the dimensions of this lot, did not warn Opitz, and therefore his successors in title, that this piece of property in question was supposed to have been leased, and that therefore the lease would not operate to prevent the running of the statute. Hence we think that the judgment of the municipal court was wrong and must be reversed.

The judgment of the municipal court is therefore reversed, and this court having all the facts before it, and the question simply being a matter of law, the court enters up final judgment for plaintiffs in error.

*Judgment for plaintiffs in error.*

LEVINE, P. J., and WEYGANDT, J., concur.