## HAMMOND v. JOHNSON et al.

No. 5813. Decided April 8, 1937. (66 P. [2d] 894.)

22

For opinion on rehearing see 75 P. 2d. 164, and 94 Utah 35.

*F. B. Hammond,* of Price, for appellant.

*B. W. Dalton,* of Los Angeles, Cal., for respondents.

LARSON, Justice.

This is an appeal upon the judgment roll from a decree and judgment of the district court of Grand county. Plaintiff brought the action to quiet his title to the waters of Barber Spring and enjoin the defendants from asserting claim or right to any of the waters of the spring. Plaintiff predicates his right to all the waters of the spring upon adverse possession and user. Defendants deny plaintiff's adverse possession and user and allege that in 1898 and again in 1900, the district court of Grand county by decrees duly entered, had adjudicated the right to the waters of Pack creek, including Barber Spring, a tributary thereof, as between the predecessors in interest of the plaintiff on the one hand, and defendants and their predecessors in interest on the other, wherein defendants were awarded the waters of Barber Spring for seven consecutive days out of every ten, and the predecessors of plaintiff were allocated the waters of said spring for three consecutive days out of every ten days. The trial court entered its judgment against plaintiff and decreed that the rights of the parties are now as fixed in the decrees of 1898 and 1900, as set forth by defendants, and awarded defendants their costs. Plaintiff prosecutes this appeal upon the judgment roll, asserting that the conclusions of law and the judgment and decree are not supported by and are contrary to the findings of fact.

The trial court, in its findings of fact, found: That since 1894, plaintiff and his predecessors in interest have been the owners and in possession of the 80 acres of land claimed by plaintiff; that for more than fifty years defendants and their predecessors have been the owners and in possession of about 1,000 acres of land lying down the slope and about 5 miles northwest of the lands of plaintiff; that the lands of plaintiff and of the defendants in their natural state are barren and unproductive unless irrigated; that in 1898 and in 1900, decrees were entered in the district court of Grand county, in actions then pending between the predecessors in interest

of the respective parties to this action, wherein and whereby the rights to the use of the waters of Pack creek, including Barber Spring, were determined and adjudicated and plaintiff's predecessors allocated the entire flow for three consecutive days out of every ten, and the defendants and their predecessors given the entire flow for seven consecutive days out of every ten days.

Findings of fact numbered 4, 8, and 9, which form the bone of contention on this appeal, follow in haec verba:

"4. That Pack creek is a natural stream of water which has its source and natural drainage basin in the La Sal Mountains, San Juan County, Utah, and flows northwesterly through the lands of the plaintiff and the defendants to the Colorado River; that said creek is the only source of water for irrigating the lands of the plaintiff. It is a source but not the only source of water to irrigate the lands of the defendants. Except during short periods of the year when snows are melting upon the watersheds of the sources of said water supply, all of the waters which the plaintiff and the defendants are enabled to obtain from said Pack Creek, and other sources, are necessary for the proper and economical irrigation of the said lands of the plaintiff and the defendants. The waters of Pack Creek fluctuate greatly from year to year and from season to season depending upon the precipitation in the water sheds and weather conditions; the maximum flow is from about April 1st to July 1st, and the minimum flow occurs in the summer and fall months. That after about July 1st there is no water at all in Pack Creek for about four or five miles above the lands of the plaintiff; that arising eight or ten feet from plaintiff's lands and about three hundred feet from the bed of Pack Creek is the Barber Spring which flows at all times of the year about one-fourth of a cubic foot of water per second. If not interfered with the waters of this spring would flow into Pack Creek. A short distance below the lands of the plaintiff there arises another stream of water in the bed of Pack Creek. After the spring run-off the waters last mentioned and said Barber Spring comprise the entire flow of Pack Creek between the lands of the parties, except for occasional flood waters. That during the summer months in years of drought and during the hot days of any year, after the spring run-off has ceased, there are times when the waters of Barber Spring, when not interfered with, do not flow beyond the lands of the plaintiff or reach the waters of the spring which arises in the creek bed below the plaintiff's lands. At such times the combined flow of said two springs does not reach the

lands of the defendant, but sink into sand and gravel in the bed of the creek."

"8. That on or about the 24th day of February, 1925, W. D. Hammond, brother of plaintiff, purchased the Barber ranch, including the lands described in plaintiff's complaint and among the appurtenances to said ranch he claimed the right to the use of all the waters of Barber Spring and did use the same for irrigation, culinary, domestic and stockraising purposes under a claim of right and title, continuously and without interruption from the defendants from the date of said purchase to the 24th day of June 1929, and the said use was open, notorious, hostile and adverse to the rights of the defendants."

"9. That on the 24th day of June 1929, the plaintiff purchased the Barber Ranch, including the lands described in his complaint from said W. D. Hammond, and ever since that date has been and is now the owner of and in possession of said ranch; that among the appurtenances to said ranch which the plaintiff so purchased he claimed the right to the use of all the waters of said Barber Spring. He has used the said waters from said Spring for irrigation, culinary, domestic and stockraising purposes from and including the date of said purchase to the date of the commencement of this action, without interruption from the defendants under a claim of right and title, openly, notoriously, and adversely and hostile to the rights of the defendants herein; and that during all the time when said W. D. Hammond and the plaintiff were using the waters of said springs as aforesaid, such use was continuous and uninterrupted and with the knowledge, but without the consent of the defendants; that said use was not in turns as provided in the decrees aforesaid, but was against and in violation of said decrees; and at no time when the said W. D. Hammond and the plaintiff were using the waters of Barber Spring as aforesaid, out of turn and in violation of said decrees did the defendants, or either of them consent to or acquiesce in such use, but on the contrary some of the defendants did protest and object to said W. D. Hammond and the plaintiff against such use upon many occasions telling the said W. D. Hammond that he had no right to the use of said waters out of turn and that if he was so using said waters he was stealing the same from the defendants, and told the plaintiff that he had no right to the use of said spring water out of turn and that if he was so using said water out of turn he was stealing the same from the defendants; and that all of the use of the waters of said spring made by either said W. D. Hammond or the plaintiff out of turns as prescribed in said decrees was made over the objections and protests of the defendants and was without their consent and acquiescence."

Upon the foregoing findings of fact, the court drew conclusions of law (1) that plaintiff and defendants were joint owners of the waters of Barber Spring and Pack creek in the proportions and rights as set forth in the decrees of 1898 and 1900, referred to in the findings of fact; (2) that plaintiff was entitled to no judgment against defendants, but defendants were entitled to judgment against plaintiffs in accordance with conclusions of law No. 1; and (3) that defendants recover costs. And the court entered its judgment and decree according to these conclusions of law.

Appellant (plaintiff herein) contends that the conclusions of law and the judgment and decree are contrary to the findings of fact. Two questions are presented for determination: First: Can water rights be acquired in this state by adverse user and possession? Second: If the first question be answered in the affirmative, do the findings of fact establish a title by adverse user and possession? If either of the questions be answered in the negative, the judgment of the trial court must stand. If both questions be answered in the affirmative, the judgment must be reversed. We shall consider them in their order.

First. "Water of all streams and other sources in this state, whether flowing above or under the ground in known or defined natural channels, is hereby declared to be the property of the public, subject to all existing rights to the use thereof." R. S. Utah 1933, 100-1-1. And "water rights," as acquired by private persons or companies, ▆▆ includes or means the right to the use thereof, and does not, except under certain limited conditions, vest any title to the corpus of the water in the appropriator or user. *United States* v. *Caldwell*, 64 Utah 490, 231 P. 434; *Gunnison Irrig. Co.* v. *Gunnison Highland Canal Co.*, 52 Utah 347, 174 P. 852. Beneficial use is the basis, measure, and limit of right to the use of water, and when the use is abandoned for five years, such water reverts to the public and may be again appropriated. R. S. 1933, 100-1-3, 100-1-4. But the right to the use of water, once established or obtained, is a

valuable property right and upon its sale or transfer requires the same form and solemnity as a transfer of real estate. R. S. Utah 1933, 100-1-10; 2 Kinney on Irrig. and Water Rights, p. 1331, and cases cited. A suit to quiet title to water rights for irrigation purposes is in the nature of an action to quiet title to, real estate. *Rickey Land & Cattle Co.* v. *Miller & Lux*, 152 F. 11, 81 C. C. A. 207; *Taylor* v. *Hulett*, 15 Idaho 265, 97 P. 37, 19 L. R. A. (N. S.) 535. And this court in the case of *Conant* v. *Deep Creek & Curlew Valley Irrig. Co.*, 23 Utah 627, 66 P. 188, 189, 90 Am. St. Rep. 721, said:

"A right to divert and use the waters of a stream, acquired by appropriation, is a hereditament appurtenant to the land for the benefit of which the appropriation is made. [Citing cases.] 'The terms, "land," "real estate," and "real property," include land, tenements, hereditaments, water rights, possessory rights and claims.' * * * An action, therefore, to quiet the title and determine and to establish the right to divert and use water for such purposes is in the nature of an action to quiet the title to real estate."

That title to real estate may be acquired by adverse possession is too elemental to require discussion or citation of authorities, but since respondent contends that the statutes of the state relative to appropriation and abandonment of water has modified the general rule and excepted water rights from the laws governing other real estate, we have set forth groundwork for a proper understanding of the question here presented and its solution. The statutes governing title by adverse possession of real estate are sections 104-2-7 to 104-2-12, inclusive, R. S. 1933, and provide the elements of adverse possession and what must be shown to establish title. This court has, in a number of cases, approved and recognized the holding that title to water rights may be based upon adverse user and possession; outlined the matters that must be shown to maintain such title, and upheld title when such elements were proved. In the recent case of *Ephraim Willow Creek Irrig. Co.* v. *Olson*, 70 Utah 95, 258 P. 216, 217, Mr. Chief Justice Thurman said,

"It thus appears from the pleadings that plaintiffs claim title to the water rights in question by prior appropriation, and that the defendants claim by prior appropriation and adverse use. * * * The only question involved is the defendants' right by adverse use."

Later in the opinion, he quotes with approval from 1 Words and Phrases, First Series, p. 227:

"To constitute 'adverse possession' the possession must be actual, for otherwise there is no disseisin, and the real owner remains in possession, actually or constructively. It must be continuous, for upon its cessation or interruption the possession, in contemplation of law, is again in the holder of the legal title. It must be hostile to the real owner, and with the intention to claim the land adversely to him. This claim must be manifest from the nature or circumstances of the possession, so that the owner may be informed of it, and that he shall not be misled into acquiescence in what he might reasonably suppose to be a mere trespass when he would not have acquiesced in the assertion of a right adverse to his own title."

And in *Smith* v. *North Canyon Water Co.*, 16 Utah 194, 52 P. 283, 286, this court stated the rule so clearly we quote it:

"The right of the defendant in the water would become fixed only after seven years' continuous, uninterrupted, hostile, notorious, adverse enjoyment; and, to have been adverse, it must have been asserted under the claim of title, with the knowledge and acquiescence of the person having the prior right, and must have been uninterrupted."

Other cases to the same effect are: *Spring Creek Irrig. Co.* v. *Zollinger,* 58 Utah 90, 197 P. 737; *Center Creek Water & Irrig. Co.* v. *Lindsay,* 21 Utah 192, 60 P. 559; *Francis* v. *Roberts,* 73 Utah 98, 272 P. 633.

But respondents argue that all these cases, except the one last cited, were either tried or were based upon rights claimed to have been acquired prior to the enactment of the law of appropriation of water through the office of the state engineer, and (1) since the enactment of that statute, water rights can only be acquired by appropriation through the

office of the state engineer and can only be lost by abandonment, and when abandoned it reverts to the state; and (2) if water can be acquired by adverse user and possession since the enactment of the appropriation laws, it cannot be so done after adjudication of the rights, and in defiance of the terms of the adjudication decree. The answer to the first proposition is found within the terms of the statute, relative to appropriation. Sections 100-3-1 and 100-3-2, R. S. 1933, read:

"Rights to the use of the *unappropriated public waters* in this state may be acquired by appropriation in the manner hereinafter provided, and not otherwise." Section 100-3-1.

"Any person who is a citizen * * * in order hereafter to acquire the right to the use of any *unappropriated public water* in this state shall, before commencing the construction * * * make an application in writing to the state engineer." Section 100-3-2. (Italics added.)

It is clear from the language that the sections above quoted apply only to acquiring rights in the *unappropriated public water,* and have no reference to water rights which have passed to private ownership until they have been ■ abandoned and thereby reverted to the public. How may water rights under the statute be lost? Section 3468, Comp. Laws 1917, in force during the times involved in this action, reads:

"When the appropriator or his successor in interest abandons or ceases to use water for a period of seven years, the right ceases, and thereupon such water reverts to the public, and may again be appropriated, as provided in this title; but questions of abandonment shall be questions of fact, and shall be determined as are other questions of fact."

Construing this section, this court in *Deseret Live Stock Co.* v. *Hooppiania,* 66 Utah 25, 239 P. 479, 481, said:

"By express language of the foregoing statute there are two methods or means by which one entitled to the use of waters in the state may lose such right: (1) By abandonment; and (2) by ceasing to use the same for a period of seven years."

Respondent argues that these methods, being provided by statute, are exclusive, and therefore rights can be lost in no other way, and when lost in either of these ways the waters revert to the public. Abandonment is not based upon a time element and mere nonuser will not establish abandonment for any less time, at least, than the statutory period. The controlling element in abandonment is a matter of intent. In this connection, the word "abandon" has been held to mean "to desert or forsake." *Dodge* v. *Marden,* 7 Or. 456. "Abandonment, as applied to the doctrine of appropriation of water to a beneficial use, may be defined to be an intentional relinquishment of a known right." *Oviatt* v. *Big Four Min. Co.,* 39 Or. 118, 65 P. 811, 812; *Deseret Live Stock Co.* v. *Hooppiania,* supra. There can be no abandonment of a water right unless there is a concurrence of the acts of the party with his intent to desert, forsake, or abandon the right. A forfeiture for nonuser during the statutory time may occur despite a specific intent not to surrender the right. It is based, not upon an act done, or an intent had but upon a failure to use the right for the statutory time.

"While upon the one hand, abandonment is the relinquishment of the right by the owner with the intention to forsake and desert it, forfeiture upon the other hand, is the involuntary or forced loss of the right, caused by the failure of the appropriator or owner to do or perform some act required by the statute. Forfeiture is a 'punishment annexed by law to some illegal act or negligence in the owner of lands, tenements, or hereditaments, whereby he loses all interest therein.' " 2 Kinney on Irrigation & Water Rights (2d Ed.) p. 2020, § 1118.

These two, abandonment and forfeiture for nonuser, are the methods provided by the statute by which one, through operation of law, may by his own act lose or divest himself of his rights to the use of water. And since the right to the use of water is conferred or granted by the public, and no third party, by act, deed, or contract, has entered the picture, the right thus lost by the owner reverts

to the grantor thereof, the public. But neither abandonment nor forfeiture by nonuser takes cognizance of or applies to a situation where a third party has entered the scene. One may obtain rights to the use of public waters by appropriation or may obtain private rights to the use of water by purchase, lease, or grant in recognition of the owner's title, or in derogation and defiance of the owner's title by disseisin of the owner and use and possession of the right for the statutory time, commonly called "adverse possession." The adverse possessor does not rely upon any act or deed of the owner, but upon his own act or deed. He does not claim through his predecessor, but against him. He recognizes that his predecessor has some right, title, or color of title in the property, but refuses to honor or submit to it. He enters as a conquistador, bent upon acquiring that which another possessed, not necessarily vi et armis, by killing or physically ejecting the owner, but by the process of assuming and exercising the rights and prerogatives of the owner, without his consent and in defiance of the owner's will. He plants his flag, his standard, as it were, upon the property as notice to the owner and all the world that he has taken possession, and henceforth will govern and control it; that the property henceforth has a new owner and that he proposes to maintain that title and possession against all.

From Attila, the Hun, down through the colonial expansions of the Seventeenth and Eighteenth centuries to the present, the right of one with sufficient nerve and courage to extend his dominions by the simple process of taking possession has been recognized, subject only to growing and more definite and refined methods and requirements of manifesting the possession and the intention to take and hold. And so the statutes give force and effect to this old principle by providing that one may so dispossess another and obtain his rights and properties, by the simple expedient of taking possession thereof and evidencing the intention to claim and keep the property by acts that can leave no doubt that the intruder is not there as a mere trespasser. The

conditions which, as a matter of law, satisfy this requirement are set forth in sections 104-2-9 to 104-2-12, inclusive, and are usually stated to be, "open, notorious, peaceable and exclusive occupation of the premises under claim of right, or color of title, for a period of seven years continuously, adversely and in hostility to all claims of superior rights in any other person, without interruption of possession by the owner or prior claimants, and the payment of all taxes lawfully levied against the property."

It will thus be seen, both from the provisions of the statute and from the inherent nature of the terms and situations from which they arise, that adverse possession is not founded upon or dependent on the doctrines of abandonment, or forfeiture for nonuser, of water rights. The state is interested in the matter of abandonment of water rights and nonuser thereof, because of the importance of water due to the arid conditions of the state. Abandonment and nonuser of water rights presupposes that such waters are thereby permitted to run to waste, to prevent which the state steps in and permits others, who will put the water to beneficial use, to do so. As long as water which has passed to private hands is put to a beneficial use, the state has no vital interest as to who the user is. That is, as long as the use granted and recognized by the state is exercised, the state has no interest in what may be the name of the person who exercises it. It follows, therefore, that notwithstanding the statute of appropriation, as between private claimants, water rights in Utah can be acquired by adverse user and possession.

Coming then to the second question: Do the findings of fact show a title by adverse possession in appellant as against respondents? Findings of fact numbered 1, 3, 8, and 9 set forth sufficient facts to sustain a judgment for plaintiff (appellant here) on the ground of adverse use. Findings of fact numbered 8 and 9 find all the elements of an adverse user by plaintiff and his predecessor in interest W. D. Hammond as against the defendants. It is

there found that from about February 24, 1925, to the commencement of this action in October 1934 (almost ten years), plaintiff and his predecessor in title did use all the waters of Barber Springs for irrigation, culinary, domestic, and stock-raising purposes, exclusively, continuously, and without interruption, openly, notoriously, adversely, and hostile to defendants, under a claim of right and title, with the knowledge, but without the consent, and over the protests and objections of the defendants; that there were no interruptions of plaintiff's use, although defendants stated that plaintiff was stealing the water from them.

It is elemental that an interruption of adverse user by the owner must be actual and not merely declarations or verbal protests. *Sowa* v. *Schaefer*, 38 Ohio App. 522, 175 N. E. 745; *Cox* v. *Clough*, 70 Cal. 345, 11 P. 732; *Foote* v. *Kearney*, 157 Wash. 681, 290 P. 226. To interrupt the continuity of the adverse occupant's possession, there must be a physical interruption of the adverse possession, or a suit or some unequivocal act of ownership which interrupts the exercise of the right claimed and being enjoyed by the adverse claimant. 2 C. J. S., Adverse Possession, p. 701, and cases cited. Such interruption of the adverse claimant's occupancy or user, to stop the running of the statute, must be of the same definite character as must the adverse claimant's possession and user be to start the statute running. The interruption must be open, notorious, and under claim of right such as to manifest an intention to repossess the property and dispossess the occupant, and be a challenge to his right and dominion. It must bear on its face an unequivocal intention to take possession. *Smith* v. *Southern Pac. R. Co.*, 1 Cal. (2d) 272, 34 P. (2d) 713; *Bonebrake* v. *Flourney*, 133 Okl. 101, 271 P. 658; 2 C. J. p. 96; *Nelson* v. *Johnson*, 189 Ky. 815, 226 S. W. 94. The finding by the court that defendants uttered word protests only against plaintiff's use of the water only emphasizes the adverse nature of plaintiff's holding and use, and negatives the possibility that plaintiff's use may have been permissive. It is a specific finding

that defendants knew that plaintiff had invaded their dominions, was taking and claiming the water, and put them upon notice to assert their rights and repossess the property within the statutory period or lose the right to the adverse claimant. Likewise the finding by the court that defendants said plaintiff was stealing their water negatives an abandonment of the water by defendants so it could not revert to the public and be again subject to appropriation. And plaintiff having continuously used and needed the water, there was no seven-year period of nonuser which would revert the water right back to the public for reappropriation. During the period of melting snow and spring run-off when Pack creek flows enough water for all claimants, defendants do not need or use the one-fourth second foot flow of Barber Spring, and during all times when the flow is not sufficient for all claimants, the court found that plaintiff used the waters of Barber Spring adversely so as to obtain a right thereto. The findings show plaintiff entitled to a decree quieting his title to the waters of Barber Spring against defendants.

It follows that the conclusions of law and judgment and decree are not sustained by and are contrary to the findings of fact. The cause is remanded to the district court of Grand county with directions to set aside the conclusions of law and judgment and decree, and enter new conclusions and decree in harmony with this opinion. Costs to appellant.

FOLLAND, C. J., and HANSON, MOFFAT, and WOLFE, JJ., concur.