**Alex MACIAS and Rosamond Macias, Husband and Wife, Appellants,**

**v.**

**GUYMON INDUSTRIAL FOUNDATION, Appellee.**

**No. 51324.**

Supreme Court of Oklahoma.

May 15, 1979.

Board & Boring, Guymon, for appellants.

Bryan L. Wright, of Wright, Dale & Jett, Guymon, for appellee.

OPALA, Justice:

The dispositive issue before us is whether in this case an adverse claimant's possession may be tacked to that of his immediate predecessor in title and, when thus united, be deemed to extend for the requisite period of fifteen years. 12 O.S.1971 § 93(4).

The dispute stems from a mistaken location of a fence line separating two

quarter sections of land.[1] The fence, which was believed to mark the correct boundary between the two tracts, was in fact 51 feet to the north of the section line.[2]

1. SW/4 § 21 is referred to as SW/4
NW/4 is referred to as NW/4

The following depicts the two quarter sections and the disputed tract:

SW/4 § 21
Northern edge of road easement
Northern edge of pipeline easement
Southern edge of road easement
Old fence line
105'
42'
43'
51'
Section line & southern edge of pipeline easement
NW/4 § 28
S/4 Corner § 21

- 63' Texas County road easement

- 51' disputed tract

- 43' Pipeline easement

- 9' strip where road easement overlaps disputed tract

Scale: 2½" = 100'

Chain of Title:

SW/4 § 21 - Powers to Stevens [date unknown];
Stevens to Guymon Industrial Foundation [1966]

NW/4 § 28 - Cabot Carbon to A. R. Macias [1959];
A. R. Macias to Alex and Rosamond Macias [1963]

2. Fact that adverse claimant was mistaken as to the true boundary line and was not aware that he was encroaching upon lands owned by others did not preclude claimant from acquiring the disputed tract by prescription if, under claim of right, he occupied the tract openly, peaceably and exclusively for more than 15 years. *Leach v. West*, Okl., 504 P.2d 1233, 1237, 1238 [1972].

In the suit below Alex and Rosamond Macias [claimants], owners of NW/4, sought to establish their title by prescription to the 51-foot tract of land which extends across the southern part of SW/4, whose record owner is Guymon Industrial Foundation [Guymon]. Claimants assert their adverse possession of the disputed property began in 1943 when their predecessor in title, Cabot Carbon, secured the vacation of the county line section road between the two quarter sections in question and thereafter allegedly claimed ownership of the property located on both sides of the section line. It was apparently in 1943 when the fence was built 51 feet to the north of the section line. However, Carbon's intrusion upon SW/4 was not hostile but permissive since Carbon had oil and gas leases, as well as pipeline easement, from the then owner of SW/4.[3] Adverse occupancy cannot be predicated on permissive possession.[4]

In 1959 Cabot Carbon conveyed NW/4 to claimants' predecessor in title, A. R. Macias. At that time the fence line, extending 51 feet to the north of the section line, still marked the boundary between the two parcels of land. In 1963 claimants' title to the NW/4 was derived by conveyance from A. R. Macias. So far as the record discloses, no interruption in possession occurred in course of transferring title from A. R. Macias to the claimants. The adverse character of the first occupant's [Macias] possession is not in dispute. Neither does Guymon dispute that the present claimants held adversely from the date of their conveyance until 1970, when Guymon gave them notice of its title.

Where one adverse occupant of land conveys to another, there is privity of estates between them. If, as here, no break in continuity of possession occurs, the succeeding occupant may tack his possession to that of his predecessor to complete the requisite prescriptive period.[5]

Claimants became first aware of Guymon's claim to the 51-foot tract when they received, in 1970, Guymon's notice thereof by letter. In its letter Guymon claimed ownership of the disputed tract and put them on notice that their continued possession of the property was permissive in character.

Claimants' possession of the disputed strip did not have its origin in subordination to Guymon's rights. The occupancy's original adverse character could not be altered by Guymon's subsequent "permission". Guymon's unsolicited consent to the use of the land, standing alone, could not transmute claimants' rights in the tract[6] and make their occupancy non-adverse.

If occupancy of premises beyond its true boundary line is actual, open, visible, notorious, continuous and hostile, it may be "adverse" although occupants may have been unaware, or under misapprehension, as to the true location of the line. *Hammer v. Bell*, Okl., 390 P.2d 492, 498 [1964].

3. Carbon secured oil and gas leases from Powers, then owner of SW/4, on 120 acres of the west half of § 21 in 1939 and the remaining 200 acres thereof in 1944. It was also Carbon who secured the 43-foot pipeline easement from Powers across the southern part of SW/4 which strip lies within the disputed tract.

4. *Records et al. v. Miles et al.*, 200 Okl. 62, 191 P.2d 918, 920 [1948]; *Tindle v. Linville*, Okl., 512 P.2d 176, 178 [1973].

5. Privity between successive possessors is necessary, and when this element is present, relating all successors to the original entry, successive adverse holdings may be tacked. Privity of possession rather than privity of title is required; it exists when one holds lands in subordination to the claim of his predecessor and adverse to the true owner under an understanding between the predecessor and himself or by operation of law. Where, however, there is privity between two or more adverse possessions so that they are all referable to the original entry, they may be united and the holdings regarded as continuous. *Smith v. Pettijohn,*, Okl., 366 P.2d 633 [1961]; *Buckner v. Russell*, Okl., 331 P.2d 401 [1958]; *Oliphant v. Dalton*, Okl., 304 P.2d 300 [1956]; *Ellis v. Williams*, Okl., 297 P.2d 916 [1956].

6. The statute is not interrupted by giving notice to an occupant that true title is in someone else unless the landowner, or someone in his behalf, acts overtly to oust the adverse claimant. *Sowa v. Schaefer*, 38 Ohio App. 522, 175 N.E. 745 [1931]; *Naporra v. Weckwerth*, 178 Minn. 203, 226 N.W. 569 [1929]; see also anno. 65 A.L.R. 128.

The testimony adduced does not indicate that after 1970 claimants held in subordination to Guymon by relinquishing their claim of right.[7]

The record discloses claimants were approached by Guymon, some time in 1969, to donate some of their land for a road to be built between the two parcels of land. They agreed so to do. Guymon later granted to Texas County a 63-foot right-of-way easement. At that time the fence on the disputed line was removed. The road was subsequently built, its southern edge resting nine feet inside the disputed 51-foot strip. Guymon claims here that its act of granting the easement operated in law to interrupt claimants' adverse possession.

Heavy reliance is placed by Guymon on its 1969 right-of-way easement to the county. We cannot give it the effect of bringing about claimants' dispossession from any part of the disputed tract—not even from the north nine-foot strip to which the easement extends. When the road was first cut there, claimants did not know Guymon professed its status of "true title" in the tract. The county's occupancy of the surface was not incompatible with their will since they themselves had expressed an intention of allowing the land to be so used. There was not the slightest element of manifested dispossession by entry and hence no interruption in the continuity of claimants' status as occupants adverse to Guymon. So far as claimants knew or were able to perceive, it was not Guymon entering the nine-foot portion of the strip but rather the county using it for a roadway—a purpose which met with their approval. No other legal significance can be attached to the easement and its subsequent use as a right of way.[8]

Lastly, upon being notified of Guymon's claim to the 51-foot tract of land, claimants entered into negotiations to buy the disputed strip from them. They were unsuccessful. According to the record, their purpose in offering to buy the land in question was to remove any cloud upon their title and avoid possible litigation in the future.

One in possession of realty under color of title or claim of right who attempts to protect his interest from litigation by seeking to purchase an outstanding claim to his property does not by so doing admit the superiority of title sought to be bought, nor does he change the nature of his possession, which was adverse before, to one that is subordinate to the title whose acquisition is desired.[9]

There is here no basis in law for refusing to recognize claimants' title by prescription to the 51-foot strip in controversy. The

7. Transcript, pages 20, 22 and 23 [July 19, 1977];

"Q Did you recognize they—did you at any time admit you didn't have a right to that tract?

A That is what they said. I asked you and you said we had, really it was our property.

* * * * * *

Q At any time, Mr. Macias, after receiving the letter from Mr. Hensley, did you continue to occupy this tract?

A Yes.

Q Did you continue to use it?

A Yes.

Q Did you claim it as a owner even after you got the letter from Mr. Hensley?

A Yes.

Q Did you ever admit to anyone even and including the defendants that they owned the disputed tract?

A No."

8. Where true title holder enters a part of his land adversely occupied by another, the statute of limitations will be arrested only as to so much of the land as has been entered and adverse possessor will be restricted to that land of which he remains in actual possession. *Goen v. Sansbury*, 219 Md. 289, 149 A.2d 17 [1959]. Interruption of adverse possession by record owner's entry must consist of some acts clearly giving notice to the world of his intention to exclude and dispossess the present occupant. Guymon's reliance on its easement and the county's subsequent construction of the road lack the necessary elements of claimants' dispossession by entry, actual or constructive. *Bonebrake v. Flourney*, 133 Okl. 101, 271 P. 658, 659 [1928].

9. *Richterberg v. Wittich Memorial Church*, 222 F.Supp. 324, aff. *Christ Church Pentecostal v. Richterberg*, 334 F.2d 869 [1964], cert. den. 379 U.S. 1000, 85 S.Ct. 719, 13 L.Ed.2d 702; *Fife v. Barnard*, 186 F.2d 655 [CA 10 1951]; *Hurie v. Quigg*, 121 Okl. 80, 247 P. 677, 679 [1926]; see also anno. 125 A.L.R. 825.

adverse occupancy of their predecessor in title, which began in 1959, when united with claimants' own possession, had extended for the requisite 15-year period when the present suit was brought in January 1977. The trial court's judgment rests therefore on legally impermissible inferences drawn from undisputed facts. It cannot stand.

The Court of Appeals' opinion is accordingly vacated and trial court's judgment reversed with directions to enter judgment in favor of the plaintiffs.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

BARNES, J., dissents.