Melvin CHURCH, Plaintiff and Appellant,

v.

MEADOW SPRINGS RANCH CORPORATION, INC., Estate of Thomas Tony Castagno, Albert J. and Bernice B. Castagno, Myron T. Castagno, Eugene Castagno and Administrator of the Estate of Thomas Tony Castagno, Richard Castagno, John Does and Jane Does, One through Six, as Heirs of Thomas Tony Castagno, Defendants and Respondents.

No. 17241.

Supreme Court of Utah.

Feb. 16, 1983.

Kenneth M. Hisatake, Salt Lake City, for plaintiff and appellant.

Paul N. Cotro-Manes, Salt Lake City, Douglas F. White, Tooele, John A. Rokich, Magna, for defendants and respondents.

STEWART, Justice:

Melvin Church brought this action against Albert and Bernice Castagno for damages for breach of an oral contract to convey certain water rights to Church and against Meadow Springs Ranch Corp. and others to quiet title in Church to certain water rights. A judgment of no cause was entered against Church and in favor of all defendants. On appeal, Church claims with respect to the claim for damages that the trial court erred in holding that his right to acquire the water rights in question was contingent upon his perfection of those rights and that he had not complied with that contingency. With respect to the quiet title action, Church argues that an unperfected application to appropriate water was not appurtenant to the land and therefore was not conveyed through various mesne conveyances of land to Meadow Springs Ranch Corp.

Plaintiff owned approximately sixty acres of unirrigated land near Grantsville, Tooele County. On March 10, 1973, he entered into an earnest money agreement to sell approximately forty acres and one second-foot of water to Albert and Bernice Castagno. On August 20, 1973, Albert orally agreed to convey to Church a three-fifths interest in Application No. 32822 for an appropriation of five second-feet of water from a well near the land to be conveyed. Church had learned of Application 32822 by searching the files in the State Engineer's office. The application had been filed on March 13, 1961 by Albert's father, Bernard Castagno. After Bernard Castagno died in 1965, his assets were distributed to his wife Gertrude, Albert Castagno's mother. On December 18, 1973, Church and Albert and Bernice Castagno signed a uniform real estate contract for the sale of the land and one second-foot of water.

On May 14, 1965, Gertrude Castagno conveyed her real property on which a well was located to Richard Burke. Gertrude Castagno's conveyance to Burke included a clause conveying to Burke "[a]ll water and water rights appurtenant thereto and used in connection with any of the above described properties." Thereafter, Burke sold the property, and through a series of mesne conveyances which also conveyed the appurtenant water rights, Meadow Springs Ranch acquired the property. Meadow

Springs claims all right, title and interest in the waters subject to Application No. 32822 on the theory that the rights under that application passed to it as rights appurtenant to the land. It was not until September 8, 1969, after Gertrude Castagno's conveyance to Burke and some eight years after the application had been filed, that the State Engineer approved Application No. 32822 allowing five second-feet of water to be pumped from the ground.

Before the uniform real estate contract between Church and Albert and Bernice Castagno was signed in 1973, Church told Albert Castagno that Application 32822 had been approved. The parties to the real estate contract orally agreed that Albert would seek to obtain an assignment from his mother of the water rights under that application. The parties also orally agreed that Church would drill a well for $500 and perfect the water right to the entire five second-feet of water which was the subject of Application 32822 in return for a three-fifths interest in the water, i.e., three second-feet of water. Albert Castagno and Church also agreed that after perfection of the water right, which required the drilling of wells and the filing of a proof of appropriation, one second-foot of Church's promised three second-feet of water would be reconveyed to Albert Castagno to fulfill the oral agreement that the sale of the land would be accompanied by a conveyance of two second-feet of water, although the uniform real estate contract specified only one second-foot of water. On August 20, 1973, Albert's mother assigned her interest in approved Application 32822 to her son Albert.

In an effort to comply with the terms of his oral agreement with Albert Castagno, Church applied to the State Engineer to change the diversion point, the initial legal step to perfect the water rights of approved Application 32822. However, Church never perfected the right to the five second-feet of water under Application 32822.

When Church did not deliver to the Castagnos the promised water upon the sale of the 40 acres, the Castagnos sued Church for an abatement of the purchase price. In that suit Church filed a counterclaim alleging that the Castagnos had failed to clear title to approved Application 32822 and had not applied for a change in point of diversion. Church further alleged that Castagno had not conveyed the three second-feet orally agreed upon by the parties and that Church had suffered money damages as a result.

The trial court ordered an abatement in the purchase price of the land because of Church's failure to convey the one second-foot of water to the Castagnos as specified in the real estate contract. Church's counterclaim with respect to the oral agreement for the assignment of the three second-feet of water was pleaded in a manner that the oral contract to convey a three-fifths interest in water Application 32822 (and a reconveyance back to Castagno of one second-foot of Church's three second-feet) was an integral part of the consideration for the sale of the land under the written real estate contract. However, the trial court excluded parol evidence relating to the oral agreement because it altered the duties and obligations of the parties as stated in the written real estate contract.

The trial court's judgment abating the purchase price because of Church's failure to deliver one second-foot of water was sustained on appeal. No issue was raised on that appeal as to the correctness of the trial court's exclusion of the parol evidence of the oral contract for the transfer by Castagnos to Church of a three-fifths interest in the water application. *Castagno v. Church,* Utah, 552 P.2d 1282 (1976).

In the instant case, Church seeks 1) damages against Castagnos for breach of the oral agreement to convey the three-fifths interest in the water rights under Application 32822, and 2) to quiet title to that water against Meadow Springs. Castagnos assert, *inter alia,* res judicata as a defense to Church's damage claim. As to the quiet title claim, Meadow Springs asserts it owns the water in question on the theory that the water passed as a right appurtenant to the land conveyed by Gertrude Castagno to Burke and eventually through mesne conveyances to Meadow Springs.

## I. ACTION FOR DAMAGES

The final adjudication of a claim for relief is binding on the parties and their privies and precludes a subsequent adjudication of the same claim. *International Resources v. Dunfield,* Utah, 599 P.2d 515, 516 (1979); *Krofcheck v. Downey State Bank,* Utah, 580 P.2d 243 (1978); *Belliston v. Texaco, Inc.,* Utah, 521 P.2d 379 (1974). Res judicata bars not only the relitigation of claims which have been once adjudicated but also claims which should have been adjudicated in the initial proceeding but were not. *Belliston v. Texaco, supra; Wheadon v. Pearson,* 14 Utah 2d 45, 376 P.2d 946 (1962); *National Finance Co. v. Daley,* 14 Utah 2d 263, 382 P.2d 405 (1963); *see also East Mill Creek Water Co. v. Salt Lake City,* 108 Utah 315, 159 P.2d 863 (1945).

Res judicata bars Church from relitigating the issues pertaining to the oral agreement which provided for Castagnos to convey three second-feet of water to Church. The claim is essentially the same as Church's counterclaim in the first case. It was so integrally related to the essential elements of the legal position asserted by Church in the first suit that it was necessarily adjudicated in that case, although apparently on the basis of an evidentiary ruling. The law is that a claim once litigated cannot be relitigated in a subsequent case between the same parties or their privies. *E.g., Bradshaw v. Kershaw,* Utah, 627 P.2d 528 (1981);[1] *East Mill Creek Water Co. v. Salt Lake City,* 108 Utah 315, 159 P.2d 863 (1945).

The trial court's exclusion of evidence of the oral agreement extrinsic to the terms of the uniform real estate contract resulted in Church's losing on that claim. Having once lost that claim, Church was not entitled to relitigate that issue in this case. In so ruling, we are not concerned with the correctness of the trial court's ruling in the first case. 1B J. Moore & T. Currier, Moore's Federal Practice ¶¶ 0.401, 0.405[2] (2d ed. 1982). If the trial court erred, the remedy was by direct appeal. Furthermore, it is of no moment that the merits of the claim for relief in the first case were in effect determined by an evidentiary ruling. That ruling was dispositive of the merits. The result is no more subject to collateral challenge than if the ruling had been predicated on substantive principles.

## II. QUIET TITLE ACTION

Church also seeks to quiet title against Meadow Springs to a three-fifths interest in Application No. 32822. No express conveyance of any interest in that application was made by Gertrude Castagno to Richard Burke—the source of Meadow Springs' title. Meadow Springs contends, however, that an unperfected application for appropriation of water is appurtenant to the land and passes with the conveyance of the land, as do perfected water rights unless expressly reserved from the conveyance. Church claims that a mere application is not an appurtenant right and can be conveyed only by a written assignment. We do not, however, reach the merits of the issue whether Meadow Springs has title pursuant to the doctrine of appurtenant rights.

An action to quiet title to water rights is in the nature of an action to quiet title to real estate. *Daniels Irrigation Co. v. Daniel Summit Co.,* Utah, 571 P.2d 1323 (1977); *Hammond v. Johnson,* 94 Utah 20, 66 P.2d 894 (1937). To succeed in an action to quiet title to real estate, a plaintiff must

---

1. In *Bradshaw* we stated:

   When a second claim, demand or cause of action is essentially the same as a prior claim, demand or cause of action which has gone to final judgment, res judicata means that neither of the parties can "again litigate that claim, demand or cause of action or any issue, point or part thereof which he could have but failed to litigate in the former action." *Wheadon v. Pearson,* 14 Utah 2d 45, 46, 376 P.2d 946, 947 (1962). The cited authority applied that principle against a plaintiff who lost on one theory and then brought an action on another one. The principle is equally applicable to a defense which might have been but was not asserted in connection with an earlier proceeding (which terminated in a final judgment) in what is essentially a single and continuing controversy over the appropriate relief to give for a single wrong or a closely related group of wrongs. *Id.* at 531.

prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title. *Colman v. Butkovich,* Utah, 538 P.2d 188 (1975); *Mercur Coalition Mining Co. v. Cannon,* 112 Utah 13, 184 P.2d 341 (1947); *Home Owners' Loan Corp. v. Dudley,* 105 Utah 208, 141 P.2d 160 (1943); *Babcock v. Dangerfield,* 98 Utah 10, 94 P.2d 862 (1939). Likewise, in an action to quiet title to water rights, a plaintiff must succeed on the strength of his own title, not on the weakness of defendant's.

In the instant case, the trial court ruled that under the terms of the contract Church's claim to the water rights under the application depended upon his fulfillment of the condition that he perfect the interest in the entire five second-feet of water for himself and Albert and Bernice Castagno. The trial court concluded that Church had failed to satisfy that condition. The court found:

5. That on or about the 7th day of September, 1973, the plaintiff acquired from defendants, Albert J. and Bernice B. Castagno, husband and wife, by means of a separate and individual oral agreement apart from the Uniform Real Estate Contract, a contingency interest in Three-Fifths (⅗) of the Five (5) Second feet of water represented by an approved application for appropriation of water, No. 32822.

6. That such oral agreement for Three-Fifths (⅗) interest of Five (5) Second feet of water for the plaintiff, was conditioned upon the plaintiff securing the entire Five (5) Second feet of water represented by the approved water application No. 32822 for himself and the defendants, Albert J. and Bernice B. Castagno.

7. That the plaintiffs' [sic] efforts, financially or otherwise, was [sic] the only consideration on which he purchased his Three-Fifths (⅗) contingency interest in the Five (5) Second feet of water from the defendants, Albert J. and Bernice B. Castagno.

8. That the Five (5) Second feet of water represented by approved water application No. 32822 was never secured by the plaintiff.

■ The plaintiff attacks these findings of fact but does not supply any record reference to support its attack on the court's findings, which are presumptively valid. It is not enough to assert simply that the record is devoid of any evidence to support the court's finding. Such an attack must be demonstrated on the basis of the record made at trial. Therefore, in view of the trial court's findings, which are supported in the record, Church failed to prove a right superior to Meadow Springs' right to the water in question.[2]

Affirmed. Costs to respondents.

OAKS, HOWE and DURHAM, JJ., and DAVID B. DEE, District Judge, concur.

HALL, C.J., having disqualified himself, does not participate herein; DEE, District Judge, sat.

---

**2.** We have decided the quiet title action on the merits rather than on the ground of res judicata because the first action between Castagnos and Church did not specifically deal with title to the water in question, although some of the issues are similar.