### 2012 OK CIV APP 4

**Brett B. FLAGG and Lisa A. Flagg, Plaintiffs/Appellants,**

v.

**Howard Thomas FAUDREE and Dianna Moore, Trustees, or their successors in trust, under the Howard Thomas Faudree Living Trust, dated December 28, 1993, Defendants/Appellees.**

**No. 109474.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 22, 2011.

David Youngblood, Youngblood Law Office, Atoka, Oklahoma, for Plaintiffs/Appellants.

Dustin P. Rowe, Rowe Law Firm, Tishomingo, Oklahoma, for Defendants/Appellees.

DEBORAH B. BARNES, Presiding Judge.

¶1 Plaintiffs/Appellants Brett B. Flagg and Lisa A. Flagg (the Flaggs) appeal the trial court's journal entry of judgment filed on April 20, 2011, granting summary judgment in favor of Defendants/Appellees Howard Thomas Faudree and Dianna Moore, Trustees, or their successors in trust, under the Howard Thomas Faudree Living Trust, dated December 28, 1993 (collectively, Faudree). The issues on appeal in this property dispute concern the Flaggs' assertion that they and/or the previous owners of their property, Edward and Peggy Windebank (the Windebanks), "adversely possessed" a portion of Faudree's property for the 15-year statutory prescriptive period and that they have, therefore, become the owners of the adversely possessed property. Based on our review of the facts and applicable law, we reverse the trial court's grant of summary judgment in favor of Faudree and remand this case to the trial court with directions to enter summary judgment in favor of the Flaggs.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The Windebanks acquired ownership of a 700 to 800-acre [1] tract of land in Johnston County in 1976.[2] In 1999 they sold it to the Flaggs. Prior to the sale, a land survey was completed revealing that title to a portion of the land within the Windebanks' fence line equal to about 29 acres (the 29 acres) was held by Faudree, the owner of an adjoining tract of land. However, prior to the survey, from 1976 until 1999, the Windebanks were unaware that they did not hold title to the 29 acres and that title was held by someone else.[3]

¶3 Believing it to be theirs, the Windebanks, since 1976, included the 29 acres within their fence and put up "no-trespassing" and "no-hunting" signs along the fence.[4] Additionally, they allowed their "[c]attle, horses, and guests" the use and enjoyment of the 29 acres.[5] Peggy Windebank states in her affidavit that "[s]ince the origin of my ownership (1976), I have always considered and treated the *entire* [29 acres] as part of my proper-

---

1. Record (R.), p. 24, deposition of Brett B. Flagg ("roughly 700 acres from Ms. Windebank in 1999"); R., p. 79, deposition of Peggy Windebank ("around 800").

2. R., p. 61, affidavit of Peggy Windebank. Although the discrepancy is immaterial, we note that in Peggy Windebank's deposition, she testified that she purchased the land in 1978. R., p. 77.

3. R., p. 52. In Brett Flagg's deposition, in response to being asked by Faudree's counsel, "Is it your understanding that prior to Ms. Windebank having the survey done, that she did not know [the 29 acres] was not in her name," he

responded, "That is correct." R., p. 26. In Peggy Windebank's deposition, in response to being asked, "you did not know that the Faudrees held title to [the 29 acres] ... until you had the survey prepared," she responded, "That's correct." R., p. 79. Peggy Windebank states in her affidavit, "In 1999, while having a survey of my acreage completed, I was informed for the first time of the location of [the 29 acres] and that the recorded title was held by someone other than myself." R., p. 62.

4. R., p. 52.

5. R., p. 101.

ty." [6]  She states in her affidavit that, since 1976, she has erected, maintained and repaired fencing around, and has exercised exclusive control and possession of, the 29 acres.

¶ 4 Peggy Windebank testified in her deposition that no one came forward to assert ownership of the 29 acres,[7] and she states in her affidavit that she never saw anyone other than her "invited guests" on the 29 acres.[8] Nevertheless, she testified in her deposition that if she had known someone else owned the 29 acres, she would not have tried to take ownership of it.[9]

¶ 5 Brett Flagg testified in his deposition that, prior to the sale, Peggy Windebank assured him that "[s]he'd always treated [the 29 acres] as hers and so that's why we assumed, when we bought her property, that we were acquiring [the 29 acres], also." [10]  A "Joint Tenancy Warranty Deed," transferring title of the Windebanks' property to the Flaggs was signed by the Windebanks on October 6, 1999, and filed in the Johnston County records on October 15, 1999.[11]  According to the Flaggs, they "purchased [the] property" on October 6, 1999.[12]

¶ 6 In a letter to Faudree dated September 9, 1999, the Flaggs, on behalf of the Windebanks (who had yet to sell their property to the Flaggs), asserted ownership of the 29 acres by adverse possession and requested that Faudree execute a quit claim deed.[13]  In a letter dated September 27, 1999, Mr. Faudree, as Trustee under the Trust, through counsel, responded by denying the Windebanks' assertion of ownership, stating that he "intends to preserve his interest in the property and will vigorously defend any legal action brought against him, or will initiate appropriate legal actions to clear his title if necessary." [14]  A few more letters were ex-

changed in which the parties maintained their positions regarding the 29 acres.

¶ 7 On May 28, 2010, the Flaggs filed a petition asserting they, "and their predecessors in title," had acquired the 29 acres by adverse possession and were seeking an order finding that, by adverse possession, they have become the owners of the 29 acres to the exclusion of Faudree.[15]  Faudree filed an "Objection to the Petition," and each side filed motions for summary judgment.

¶ 8 In its April 20, 2011 journal entry of judgment, the trial court granted summary judgment in favor of Faudree.  The trial court found in part "that in order for [the Flaggs] to prevail, they must 'tack' to adverse possession time of [their] predecessor in title [i.e., the Windebanks]," but "[t]hat [the Windebanks] clearly state[ ] possession was never adverse.  Thus, [the Flaggs] cannot prevail."  The trial court found, therefore, that Faudree is the owner of the 29 acres "clear of all liens, claims and encumbrances of [the Flaggs]."  From this judgment, the Flaggs appeal.[16]

## STANDARD OF REVIEW

¶ 9 The appellate standard of review of a trial court's grant of summary judgment is *de novo.*  *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.  On review, this Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact.  *Id.*  Summary judgment is appropriate only when there are no material disputed factual questions and one party is entitled to judgment as a matter of law.  *Id.* at ¶ 2, 914 P.2d at 1053.  "If it appears to the court that there is no substan-

6.  R., p. 61.

7.  R., p. 104.

8.  R., p. 61.

9.  R., p. 82.

10.  R., p. 24.

11.  R., pp. 75–76.

12.  R., p. 90.

13.  R., p. 63.

14.  R., p. 64.

15.  R., pp. 1–2.

16.  This case proceeds without appellate briefing pursuant to the accelerated procedure for summary judgments.  *See* Okla.Sup.Ct.R. 1.36, 12 O.S. Supp.2004, ch. 15, app. 1.

tial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment for said party." Rule 13(e), Rules for District Courts of Oklahoma, 12 O.S. Supp.2002, ch. 2, app.

## ANALYSIS

¶ 10 Adverse possession claims are disfavored and are not to be made by inference. *Francis v. Rogers,* 2001 OK 111, ¶ 13, 40 P.3d 481, 486. In questionable cases, presumptions favor the record title holder. *Id.* The statutory prescriptive period for an adverse possession claim is 15 years. *Hernandez v. Reed,* 2010 OK CIV APP 65, ¶ 7, 239 P.3d 186, 189; 12 O.S.2001 § 93(4).[17] It is clear that the Windebanks held the 29 acres for more than 15 years and that the Flaggs are the subsequent owners.

### I. The Windebanks' Lack of Awareness of the True Boundary Line

¶ 11 The trial court found the Flaggs "cannot prevail" because their predecessor in title, the Windebanks, "clearly state[d] possession was never adverse." "In order to establish adverse possession the claimant must show that possession was hostile, under claim of right or color of title, actual, open, notorious, exclusive, and continuous, for the statutory time." *Krosmico v. Pettit,* 1998 OK 90, ¶ 15, 968 P.2d 345, 349 (citation omitted). Although the uncontroverted evidence shows the Windebanks were unaware that another held title to the 29 acres, and that they asserted ownership to the 29 acres simply because they lacked knowledge of the true location of the boundary line, this does not defeat the adverse possession claim.

¶ 12 In *Krosmico,* the Oklahoma Supreme Court stated that a party's "lack of awareness of [another's] record title until [a certain date] does not detract from [its] claim that [it was] asserting ownership prior to that date. Open, visible, notorious, continuous, and hostile occupancy may be adverse

although the occupants are unaware of the true location of a boundary line." *Krosmico* at ¶ 18, 968 P.2d at 349–350 (citation omitted). Although the Windebanks may have had a benign intent and were asserting possessory rights over the 29 acres because of a lack of awareness of the true boundary line, these factors are immaterial. "[T]he intent with which the adverse possessor occupies the property is immaterial if he occupies it actually, openly, notoriously, exclusively, and hostilely for fifteen years." *Walthers v. Tanner,* 1951 OK 174, ¶ 9, 233 P.2d 303, 305. *See also Leach v. West,* 1972 OK 162, 504 P.2d 1233 (fact that adverse claimant was mistaken as to the true boundary line and was not aware he was encroaching on lands owned by others did not preclude claimant from acquiring the disputed tract by prescription if, under claim of right, he occupied the tract openly, peaceably and exclusively for more than 15 years); *Hammer v. Bell,* 1964 OK 57, 390 P.2d 492 (if occupancy of premises beyond its true boundary line is actual, open, visible, notorious, continuous and hostile, it may be "adverse" although occupants may have been unaware, or under misapprehension, as to the true location of the line).

¶ 13 The Windebanks' lack of awareness does not defeat the Flaggs' adverse possession claim. Consequently, the trial court's finding that the Flaggs "cannot prevail" because the Windebanks "clearly state[d] possession was never adverse" is an improper basis upon which to grant summary judgment in favor of Faudree.

### II. Interruption of the Continuity of the Adverse Possession

¶ 14 In order for the Flaggs' adverse possession claim to be successful, there must be a continuous and uninterrupted 15–year period of adverse possession. "By 'continuous and uninterrupted use' is meant use that is not interrupted by the act of the owner of the land, or by voluntary abandonment by the party claiming the easement." *Hargraves v. Wilson,* 1963 OK 77, 382 P.2d

---

17. "Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter: ... (4) An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years." 12 O.S.2001 § 93.

736, 740 (quoting 17A Am.Jur. at page 695, Sec. 80, emphasis omitted). Any "unequivocal act of ownership" by the owner of the land interrupts the continuity of adverse possession. 2 C.J.S. Adverse Possession § 170.[18] However, adverse possession "is not interrupted by giving notice to an occupant that true title is in someone else unless the landowner, or someone in his behalf, acts overtly to oust the adverse claimant." *Macias v. Guymon Industrial Foundation*, 1979 OK 70, 595 P.2d 430, n. 6 (citations omitted). *See also Fadem v. Kimball*, 1979 OK CIV APP 40, 612 P.2d 287 (approved for publication by the Oklahoma Supreme Court) (severance of mineral rights as a result of the true owner executing oil and gas leases after the beginning of the period of adverse possession, *absent some ouster*, does not interrupt the adverse possession).

¶ 15 In the letter to the Flaggs dated September 27, 1999, Mr. Faudree, as Trustee of the Trust, denied the Windebanks' assertion of ownership, stating that he "intends to preserve his interest in the property and will vigorously defend any legal action brought against him, or will initiate appropriate legal actions to clear his title if necessary." [19] However, apart from this notification, there is no indication in the record on appeal that Faudree undertook any overt act to oust the Windebanks or, subsequently, the Flaggs. Absent some overt act to oust the adverse possessor prior to the expiration of the 15–year prescriptive period, a letter notifying the occupant that title is held by someone else is insufficient to interrupt adverse possession. *Macias* at n. 6. Therefore, Faudree's September 27, 1999 letter, and his subsequent letters in correspondence with the Flaggs, do not constitute interruptions in the period of adverse possession.

### III. No Material Facts Remain in Dispute

¶ 16 The elements of an adverse possession claim are actual, adverse, open, notorious, peaceable, exclusive and hostile possession for a period of fifteen years *Tindle v. Linville*, 1973 OK 64, ¶ 8, 512 P.2d 176, 178. Pursuant to the record on appeal, no substantial controversy exists as to any element of the Flaggs' adverse possession claim. Faudree's motion for summary judgment and response to the Flaggs' motion for summary judgment fail to list as controverted (or uncontroverted in Faudree's favor) any of the material elements of the Flaggs' adverse possession claim. Instead, Faudree incorrectly postulates that the Windebanks' misunderstanding regarding the true owner of the 29 acres is dispositive.

¶ 17 As set forth above, however, the subjective intent with which the adverse possessor occupies the property is immaterial. Because, pursuant to the record on appeal, it is undisputed that the 29 acres was adversely possessed by the Flaggs' predecessor in title for a period in excess of the statutory prescriptive period, we find the Flaggs are entitled to judgment as a matter of law. Therefore, we reverse the trial court's grant of summary judgment in favor of Faudree and remand this case to the trial court with directions to enter summary judgment in favor of the Flaggs.

### CONCLUSION

¶ 18 The Windebanks' lack of awareness as to the true boundary line does not defeat the adverse nature of their continuous and uninterrupted occupancy of the 29 acres for more than 15 years. Additionally, the continuity of adverse possession by the Windebanks, and subsequently the Flaggs, was not interrupted by Faudree's mere written notification to them, absent some ouster, that the Trust claimed title to the 29 acres. Moreover, Faudree's notice was given after the 15–year prescriptive period had been satisfied by the Windebanks. Because no material facts are disputed and because the Flaggs are entitled to summary judgment as a matter of law, we reverse the trial court's grant of summary

---

18. "Generally, an interference constituting an interruption must be physical, or by suit, *or by unequivocal acts of ownership . . . .*" 2 C.J.S. Adverse Possession § 170 (emphasis added). A separate section of 2 C.J.S. Adverse Possession was cited with approval by the Oklahoma Supreme Court in *Tindle v. Linville*, 1973 OK 64, 512 P.2d 176.

19. R., p. 64.

judgment in favor of Faudree and remand this case to the trial court with directions to enter summary judgment in favor of the Flaggs.

¶19 **REVERSED AND REMANDED WITH DIRECTIONS.**

FISCHER, V.C.J., and WISEMAN, J., concur.